Argued and submitted March 7, decision of Court of Appeals reversed in part;
judgment of circuit court reversed in part, and case remanded to circuit court
for further proceedings May 25, 2006

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## DENNIS MARTIN MURRAY,
*Petitioner on Review.*

(CC 02CR0274; CA A118634; SC S52704)

136 P3d 10

James N. Varner, Newberg, argued the cause and filed the
brief for petitioner on review.

Joanna L. Jenkins, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

GILLETTE, J.

Kistler, J., dissented and filed an opinion in which Riggs, J., joined.

### GILLETTE, J.

This is a criminal case in which defendant challenges the sufficiency of the evidence to support his conviction for the offense of kidnapping in the second degree (ORS 163.225, set out *post*). The Court of Appeals affirmed the conviction, although it remanded defendant's case to the trial court for resentencing. *State v. Murray*, 200 Or App 732, 117 P3d 297 (2005). We allowed defendant's petition for review and now reverse his conviction for kidnapping.

We view the facts underlying defendant's conviction in the light most favorable to the state. *See, e.g., State v. Wolleat*, 338 Or 469, 471, 111 P3d 1131 (2005) (identifying and applying that standard of review for sufficiency of evidence in kidnapping case). The victim, Linderman, drove from her home in Rogue River to Grants Pass to perform some errands. One of those errands required a stop at a Grants Pass grocery store. Linderman parked in an empty space on the west side of the store. She noticed that a man was sitting in a car parked beside hers, but gave the matter no special thought. After completing her errand inside the store, Linderman returned to her car, unlocked it, and climbed in behind the wheel. However, before she had time to fasten her seatbelt, she heard a voice (which turned out to be defendant's) say, "Get over."

Defendant attempted to push his way into the driver's side of the front seat. Linderman, who feared that defendant "was going to drive off with me," physically resisted, but lost the struggle.[1] She also screamed and honked the car horn, but no one came to her aid. Linderman described what happened next:

> "[PROSECUTOR]: So he's—continue to describe what's happening. He's pushing you, you're honking the horn, you're—
>
> "[LINDERMAN]: Yelling and screaming, and every time I yelled out he'd say shut up. He said that several times and I just kept fighting him because I thought that he was trying

---

[1] That outcome is not surprising. Defendant is nearly seven feet tall and weighs nearly three hundred pounds. The record does not disclose Linderman's size, but the events in this case occurred just two days before her eighty-third birthday.

to get me over into the passenger seat, and so it was just a—very, very frightening.

"[PROSECUTOR]: Did he—did he move you into the passenger seat?

"[LINDERMAN]: Finally, he did push me over. And then I reached for the—my left hand reached for the door and opened it and got out right quick. And then he said get out bitch, as I was leaving the car.

"[PROSECUTOR]: Did he say that before you opened the door?

"[LINDERMAN]: It was just at that—I really—I'm not sure. It just all happened almost at the same time it seemed to me.

"[PROSECUTOR]: Did he—he ordered you or—get out, bitch?

"[LINDERMAN]: He said get out, bitch."

Defendant then closed the passenger side door and drove away in Linderman's car. He abandoned the car a short time thereafter, but was apprehended almost immediately.

A grand jury indicted defendant for kidnapping in the second degree (ORS 163.225); robbery in the third degree (ORS 164.395); unauthorized use of a vehicle (ORS 164.135); and assault in the fourth degree (ORS 163.160). Defendant waived a jury trial, and the case was tried to the court. Defendant timely asserted that the evidence was insufficient to permit him to be convicted of kidnapping in the second degree, but the trial court disagreed. The trial court then found defendant guilty on all counts. Defendant appealed to the Court of Appeals, again asserting his argument respecting the insufficiency of the evidence.[2] As noted, the Court of Appeals affirmed all defendant's convictions on the merits, although it remanded the case for resentencing.[3] We allowed defendant's petition for review respecting the sufficiency of the evidence supporting his conviction for kidnapping.

---

[2] On his appeal to the Court of Appeals, defendant did not raise any assignments of error respecting his conviction on the other three counts of the indictment. Those convictions therefore are not before us.

[3] The propriety of the Court of Appeals' remand for resentencing is not at issue in this proceeding.

■■  The indictment alleged that defendant committed kidnapping in the second degree in that

> "[t]he defendant, on or about April 23, 2002, in Josephine County, Oregon, did unlawfully and knowingly, without consent or legal authority, take [the victim] from one place to another, with the intent to interfere substantially with the said [victim's] personal liberty."

That indictment in turn was based on ORS 163.225(1), which provides, in part:

> "A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:
>
> "(a)  Takes the person from one place to another[.]"

This case turns entirely on whether a rational finder of fact could conclude, from the evidence just outlined, that defendant had "take[n]" Linderman "from one place to another." That inquiry necessarily involves an issue of statutory interpretation that invokes this court's familiar methodology of examining the words of a statute, read in relevant context, and, if no clear interpretation emerges from that exercise, resorting to extrinsic aids such as legislative history to determine the intent of the legislature. *See generally PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993) (describing that methodology).

The question of what is included in the concept of "taking" a person "from one place to another" is, at bottom, an exercise in metaphysics. The words "from" and "to" create no problem here, because they clearly describe the idea of movement, *i.e.*, of a change of position. And "another" simply replicates "place"—*i.e.*, the statutory phrase fairly may be paraphrased as a matter of standard English to require that a person be moved "from place to place." Thus, in the final analysis, this case comes down to the question of how one is to define the term "place" for the purposes of ORS 163.225(1)(a).

And here is where the metaphysics problem arises. The criminal code, of which ORS 163.225 is a part, contains

no definition of "place." Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense. *See PGE*, 317 Or at 611 (noting that words of common usage typically should be given their plain, natural, and ordinary meaning). But resort to a dictionary gets us nowhere here. "Place" is defined, in *Webster's Third New Int'l Dictionary* 1727 (unabridged ed 2002), as "an indefinite region or expanse." Such a definition hardly can be said to clarify the issue. (There are many other definitions, but none comes as close as the foregoing to addressing the problem before us.) We therefore turn to the legislative history of the kidnapping statutes, to find some guidance as to legislative intent.

In *State v. Garcia*, 288 Or 413, 605 P2d 671 (1980), this court undertook a comprehensive examination of the legislative history of the kidnapping statutes.[4] We set out the court's analysis and some of its conclusions at length, because we find them to be well supported in the history of the statutes:

"The 1971 legislature adopted the present kidnapping statutes as part of the complete revision of the Oregon Criminal Code. * * * Carefully kept records of the proceedings of the [Oregon Criminal Law Revision] Commission[, the body that created the new code,] and of its subcommittees were preserved and, accordingly, provide a rich source for determination of the drafters' intent. The Commission's first draft of the kidnapping sections was adopted from the Model Penal Code and contained the following commentary:

" 'Current kidnaping statutes apply to abductions which are incidental to or an integral part of the commission of an independent crime such as robbery or rape * * *. Where the detention period is brief there is no genuine kidnaping. * * * The Model Penal Code and the New York Revised Penal Law have tried to exclude this

---

[4] The actual crime involved in *Garcia* was kidnapping in the *first* degree under ORS 163.235, but that offense cannot be committed unless the offender "violates ORS 163.225." ORS 163.235(1). Thus, the court's comments are relevant to the issue before us.

type of case from first degree kidnaping by differentiating on the basis of the movement and duration of detention of the victim. The Model Penal Code provides for kidnaping only where the kidnaper removes the victim from his place of residence or business, or a substantial distance from the vicinity where he is found * * *.'

"* * * *The minutes reveal that the drafters intended to prevent conviction and sentencing for kidnapping when the detention was merely incidental to a rape or robbery.* The difficulty facing the drafters, however, was to provide the flexibility to cover diverse kidnapping fact situations, yet rationally restrict prosecutorial discretion to punish.

"The [wording] of the proposed kidnapping statutes was revised three times. The commentary following each revision included the above-quoted passage. This passage was also included in the tentative and final draft commentaries, but the drafters added the following paragraph:

" 'The proposed draft solves this problem [of excluding abductions which are incidental to or an integral part of the commission of an independent crime] by strictly limiting kidnapping in the first degree to only those instances where the actor's purpose in abducting falls within subsection (1) of [ORS 163.235 (the statute defining Kidnapping in the First Degree)].'

"This paragraph of commentary is less than clear. In the preceding paragraph of commentary, the drafters discussed the problem of unwarranted kidnapping convictions where the abduction is merely incidental to a robbery or rape, citing the Model Penal Code and New York approaches to this problem. The 'solution,' however, refers only to Oregon's first degree kidnapping statute, and states that this offense is strictly limited by the words of the statute itself.

*"From this history we draw the inference that the Commission, and subsequently the legislature, intended that there be no conviction of the defendant for the separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime,* particularly that of robbery or rape. * * *

"The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. *The Commission reasoned that even though the malefactor's conduct offended the statutory injunctions*

*[against some other substantive offense], he would be guilty
of kidnapping also if in committing [that other offense] he
took the victim a 'substantial distance' or held the victim for
'a substantial period of time.'"*

*Garcia*, 288 Or at 416-21 (emphasis added; footnotes omitted;
brackets in original).

The foregoing discussion is useful and informative,
and the parties have not pointed to (and we are not aware of)
any better or more thorough survey of the legislative history
of the kidnapping statutes. Neither have the parties pointed
to (and we are not aware of) any original source materials
within the legislative history that would more fully inform
us.[5] Indeed, we think that the discussion in *Garcia* resolves
the issue that we have been attempting to confront, *viz.*, the
scope of the concept of "place" in ORS 163.225(1)(a).

As *Garcia* suggests, the "place" in which something
or someone may be found and from which that something or
someone may be taken is situational and contextual. It is,
among other things, a function of the object to be moved, as
well as a function of the area in which the movement occurs.
And, given that elasticity in the concept, one fairly may argue
either way the question whether, in this case, Linderman
went from one place to another.

But however one may wish to characterize the con-
frontation between defendant and Linderman in the car, no
evidence indicates that defendant tried to *keep* Linderman in
the car. Instead, defendant drove the car away. That means
that, even if one were to find some sort of asportation in the
events in question, it was only "incidental"—as that word
was used in *Garcia*—to defendant's theft of the car and,
therefore, not the kind of conduct that the legislature
intended to permit to serve as the basis for a separate kid-
napping charge. Put differently, defendant did not "take"
Linderman anywhere or, even if he did, the distance that
Linderman moved was not "substantial," *i.e.*, was not "from
one place to another." *See Garcia*, 288 Or at 421 (defendant

---

[5] The dissent offers a view of the statutory history that differs from *Garcia*.
However, we do not find the materials that the dissent relies on—most of which
were preliminary discussions—to be as useful as the *Garcia* court's summary (with
which we agree) of the net effect of the entire evolution of the kidnapping statutes.

guilty of kidnapping only if, during commission of another substantive offense, he took victim "substantial distance").

Based on the foregoing, we conclude that, as a matter of law, the evidence pertaining to defendant's encounter with Linderman would not support a conviction on a charge of kidnapping in the second degree. The trial court therefore erred in denying defendant's motion for judgment of acquittal on that charge, and the Court of Appeals also erred when it affirmed that conviction. The case must be remanded to the trial court for entry of a verdict of not guilty on the kidnapping charge and for such other further proceedings as may be required.

The decision of the Court of Appeals is reversed in part. The judgment of the circuit court is reversed in part, and the case is remanded to the circuit court for further proceedings.

**KISTLER, J.,** dissenting.

The majority reverses defendant's conviction for second-degree kidnapping, holding that no reasonable juror could find that defendant took the victim "from one place to another." In the majority's opinion, the state could meet that requirement only if it proved that defendant moved the victim a "substantial distance." Because the majority equates two concepts that the drafters of the kidnapping statutes specifically distinguished, I respectfully dissent.

The victim was getting into her car after shopping. As she did so, defendant pushed her out of the driver's seat and over onto the passenger seat. Defendant got into the driver's seat of the car, but the victim escaped before defendant could drive away with her. The majority holds that those facts are not sufficient, as a matter of law, to prove second-degree kidnapping because no reasonable juror could find that defendant took the victim "from one place to another."[1] The majority's holding turns on its interpretation

---

[1] ORS 163.225 provides, in part:

"(1) A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a) Takes the person from one place to another[.]"

of the quoted phrase. Relying on part of the legislative history set out in *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980), the majority reasons that the legislature did not want to punish, as second-degree kidnapping, movements that were incidental to the commission of some other crime, and it concludes that a movement will be incidental unless the defendant moves the victim a "substantial distance." 340 Or at 606-07.

The majority's conclusion that moving a victim "from one place to another" means moving the victim "a substantial distance" is directly contrary to the legislative history of the kidnapping statutes. There were four drafts of the kidnapping statutes.[2] The first draft provided that a person would commit the crime of second-degree kidnapping if, among other things, the person moved the victim "from one place to another." *See* Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 1, Art 12, § 1(1) (Oct 1968) (defining "restrain").[3] That draft also provided that second-degree kidnapping would become first-degree kidnapping if, among other things, the person moved the victim "a substantial distance from the vicinity where he is found." *Id.* at § 3(1).

As those two provisions demonstrate, the drafters of the kidnapping statutes understood that a person could move a victim "from one place to another" without moving the victim "a substantial distance." Proof of the latter act elevated

---

[2] The 1967 Legislative Assembly created the Criminal Law Revision Commission to revise the state's criminal laws. *State v. Garcia*, 288 Or 413, 416, 605 P2d 671 (1980). The Commission divided responsibility for drafting the revised criminal code among three subcommittees, and this court has looked to the subcommittee and the Commission's drafts, the minutes of their meetings, and their comments on the drafts to interpret the meaning of the kidnapping statutes. *See id.* (looking to drafters' intent to determine legislative intent).

[3] The first draft provided that a person committed the crime of second-degree unlawful imprisonment if he "restrain[ed] another person." Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 1, Art 12, § 4 (Oct 1968). "Restrain" was defined as interfering with another's liberty by "moving him from one place to another." *Id.* at § 1(1). Second-degree kidnapping was defined as "abduct[ing] another person." *Id.* at § 2(1). "Abduct" was defined as "restrain[ing] a person with intent to prevent his liberation by [one of two means]." *Id.* at § 1(2). Proof that a defendant moved a person "from one place to another" was thus necessary to prove both second-degree kidnapping and the lesser crime of second-degree unlawful interference—a fact that, by itself, cautions against reading the phrase as restrictively as the majority does.

the crime of second-degree kidnapping to first-degree kidnapping. Far from equating those two phrases, as the majority does, the drafters understood that each phrase described a separate act and that a person need not move the victim a "substantial distance" in order to move the victim "from one place to another."

The second draft of the kidnapping statutes continued that distinction. As before, the statutes required proof that a person move the victim "from one place to another" to establish second-degree kidnapping. Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 2, Art 12, § 1(1) (Dec 1968) (defining "restrain"). The second draft contained three alternate sets of elements that would elevate second-degree kidnapping to first-degree kidnapping. The second alternate set would have required proof that the defendant "h[e]l[d] the victim for a substantial period of time or remove[d] the victim a substantial distance from the place where the victim was first restrained * * *." *Id.* at § 3 (alternate 2). The drafters rejected that alternate set of elements because the "elements of substantial period of time and substantial distance in Alternate 2 * * * created unnecessary problems." Criminal Law Revision Commission, Subcommittee No 2, Minutes, Dec 12, 1968, 5.

Ultimately, the drafters chose to use a different set of elements—the purposes for which the defendant kidnapped the victim—to distinguish first-degree kidnapping from second-degree kidnapping. *Id.* at 5-6; *see* ORS 163.235(1) (defining purposes that distinguish first-degree from second-degree kidnapping). They also deleted any reference to "a substantial period of time" and "a substantial distance" from the text of the kidnapping statutes. The deletion of those phrases, however, does not suggest some unarticulated intent to equate, as the majority does, moving the victim "from one place to another" with moving the victim "a substantial distance." Rather, the drafters carefully distinguished the act of moving the victim "from one place to another" from the act of moving the victim "a substantial distance."

The majority's interpretation of the phrase "from one place to another" rests on a second, equally suspect proposition. As the majority recognizes, the legislature did not

intend to punish defendants for "the separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime." *Garcia*, 288 Or at 420. The legislature, however, did not change the ordinary understanding of "asportation" to accomplish that goal.[4] Rather, the legislature relied on the requirement that the defendant " '*inten[d]* to interfere substantially' with the victim's personal liberty" to distinguish kidnapping from conduct incidental to another crime. *Id.* at 421 (emphasis in original). The court's decision in *Garcia* makes that proposition clear.

The crime of second-degree kidnapping has two elements. It requires a physical act—taking a person "from one place to another." It also requires proof of a mental state—the "intent to interfere substantially with another's personal liberty." In *Garcia*, the court explained that the legislature wanted to avoid separate convictions for kidnapping "where the detention or asportation of the victim is merely incidental to the accomplishment of another crime." 288 Or at 420. Conversely, the "legislature perceived no reason not to prosecute and punish a malefactor for the separate crime of kidnapping where the detention *or* asportation is *not merely incidental* to the commission of the underlying crime." *Id.* (emphases in original).

The court then explained that the legislature relied on the mental state, not the physical act, to distinguish those two situations. The court reasoned:

> "The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. The [Oregon Criminal Law Revision] Commission reasoned that even though the malefactor's conduct offended the statutory injunctions against rape or robbery, he would be guilty of kidnapping also if in committing rape or robbery he took the victim a 'substantial distance' or held the victim 'a substantial period of time.' *As finally enacted the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the 'intent to*

---

[4] That much is apparent from *Garcia*'s recognition that incidental movement still would constitute asportation.

*interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225.* We find nothing in legislative history to indicate the legislature intended by its adverb 'substantially' anything other than was intended by the Commission in its use of the adjective 'substantial.'

"The end result is that the legislature has left it to the process of adjudication to determine whether there was an intent to interfere substantially."

*Id.* at 420-21 (emphasis added; citation and footnote omitted).

As the emphasized part of the quotation from *Garcia* makes clear,[5] the legislature used the phrase "intent to interfere substantially with [the victim's] personal liberty" to accomplish its goal of distinguishing kidnapping from incidental conduct that might accompany some other crime. *See State v. Wolleat*, 338 Or 469, 477, 111 P3d 1131 (2005) (quoting legislative history to that effect).[6] Nothing in *Garcia* or the legislative history suggests that the legislature also intended to use the act of moving the victim "from one place to another" to accomplish that purpose. The majority errs in relying on that legislative purpose to determine what the phrase "from one place to another" means. Reading that purpose into both the mental element and the physical act amounts to "double counting" and undercuts rather than advances the legislative goal.

Interpreting the phrase "from one place to another" in light of the legislative history and this court's construction of the kidnapping statutes in *Garcia*, I would hold that the state introduced sufficient evidence to submit the crime of

---

[5] In setting out *Garcia*'s discussion of the legislative history, the majority does not quote the part of the discussion beginning with the sentences emphasized above—a part of *Garcia*'s discussion of the legislative history that is, I submit, crucial to understanding both that decision and the legislature's intent in enacting the second-degree kidnapping statute.

[6] Similarly, the court held in *Garcia* that the mental element—the intent to interfere substantially with the victim's personal liberty—incorporates the concepts of a "substantial distance" and a "substantial period of time." *See* 288 Or at 421 (explaining that those concepts inform the meaning of the intent to "substantially interfere"); *State v. Wolleat*, 338 Or 469, 478, 111 P3d 1131 (2005) (same). It did not hold that the element of a physical act incorporates those concepts, as the majority now concludes.

second-degree kidnapping to the jury. Regarding the mental element, a reasonable juror could find that defendant intended to interfere substantially with the victim's personal liberty; that is, a reasonable juror could find that, but for the victim's escape, defendant intended to drive off with her. A reasonable juror also could find that defendant committed the act of taking the victim "from one place to another." To be sure, defendant did not move the victim a "substantial distance" when he moved her from one seat to another, but the legislative history makes clear that a defendant need not move the victim a substantial distance in order to move her from one place to another. Because a reasonable juror could find that the state had proved the two elements necessary to establish second-degree kidnapping, I respectfully dissent.

Riggs, J., joins in this dissent.