Submitted July 31, affirmed November 12, 2008

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ADOLPH SPEARS, JR.,
aka Adolph P. Spears, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
050432456; A132447

196 P3d 1037

Peter Gartlan, Chief Defender, and David Ferry, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and M. Ann Boss, Senior Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Carson, Senior Judge.

HASELTON, P. J.

## HASELTON, P. J.

Defendant appeals a judgment of conviction for first-degree theft, ORS 164.055(1), assigning error to the denial of his motion for judgment of acquittal (MJOA) on that charge.[1] Defendant contends that the state failed to present legally sufficient evidence that he succeeded in "taking, appropriating, obtaining or withholding" the property, arguing that the evidence was sufficient only to prove an attempted theft. The state responds that, when defendant removed five boxes of computers from inside a trailer and concealed them behind the trailer's wheels, he "took" the property for purposes of the theft statute, ORS 164.015. As explained below, we conclude that for purposes of the crime of theft, a person who acts with the requisite intent "takes" the property of another when he or she moves that property, however slightly. Consequently, we affirm.

We review the denial of an MJOA to determine whether, after viewing the facts in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994), *cert den*, 514 US 1005 (1995).

Viewed consistently with that standard of review, the record establishes the following material facts. Central Freight Lines is a freight moving facility in Multnomah County. When freight arrives at the facility, it is transferred either directly to a delivery unit for final delivery, or to "trap trailers" where it is stored until the appropriate time to move it to a final delivery unit.

On Friday, April 22, 2005, a shipment of computers arrived at the facility and was transferred into one of the trap trailers for storage until final delivery, scheduled for the following Monday. At around 6:00 the next morning, employees at the facility discovered a hole in the perimeter fence, which was then temporarily repaired.

Shortly after midnight on Sunday morning, April 24, two Portland Police Officers were called to the facility after

---

[1] Defendant was also convicted of criminal trespass in the second degree, ORS 164.245(1).

employees inside the warehouse heard suspicious noises coming from outside. Upon arriving, one of the officers saw a man stepping down from one of the trailers while carrying a box. The officers approached that area, but did not see the man. The officers then looked under several of the trailers with their flashlights, and discovered five unopened boxes containing computers concealed behind the wheels of one of the trailers. As they checked under other trailers, one of the officers spotted the legs of two people under another trailer—and, ultimately, after repeated demands to come out, defendant and another man emerged from beneath that trailer. Defendant was dressed in dark clothes with a dark cap, gloves, and a flashlight; he also had a small cutting tool next to him.

The officers arrested defendant. He was charged with first-degree theft, ORS 164.055(1), and second-degree burglary, ORS 164.215(1).

The officers later found a hand truck sitting next to a hole in the perimeter fence. Central Freight Lines recovered the five boxes of computers, which were valued at just under $8,000. After an inventory of the remaining orders, employees discovered that an additional 22 boxes of computers, with a value of about $21,000, were missing.

The case was tried to the court. At the close of the state's evidence, defendant moved for a judgment of acquittal on both the burglary and theft charges. The trial court granted the MJOA on the burglary charge based on its conclusion that the trailers were not buildings for purposes of the burglary statute. As to the theft charge, defendant argued, *inter alia*, that the state had failed to prove defendant's requisite "intent to deprive," under ORS 164.015, as incorporated into ORS 164.055(1)(a).[2] ORS 164.015 provides, in part:

---

[2] ORS 164.055(1)(a) provides, in part:

"A person commits the crime of theft in the first degree if, by other than extortion, the *person commits theft as defined in ORS 164.015* and:

"(a) The total value of the property in a single or aggregate transaction is $200 or more in a case of theft by receiving, and $750 or more in any other case[.]"

(Emphasis added.)

"A person commits theft when, *with intent to deprive another of property* or to appropriate property to the person or to a third person, the person:

"(1) *Takes*, appropriates, obtains or withholds such property from an owner thereof[.]"

(Emphasis added.)

Although the trial court rejected defendant's arguments regarding the sufficiency of the evidence of defendant's intent,[3] the court was concerned with whether the state's evidence established only an *attempted* theft. Accordingly, the court, *sua sponte*, invited the parties to present arguments on the meaning of "takes" and whether the evidence was sufficient to prove that element. Defendant argued that the evidence was sufficient to prove, at most, an attempted theft. The state remonstrated that the evidence was sufficient to show a completed theft because Oregon's theft statute does not require asportation—and, if it does, the property need not actually be removed from the owner's premises, so long as defendant "obtained," "appropriated," or "withheld" the property.

The trial court initially denied defendant's MJOA on the theft charge, reasoning that, regardless of the five boxes of computers found under the trap trailer, an additional 22 boxes of computers were missing from the facility—and the factfinder could circumstantially infer that defendant was involved in those thefts.

During closing argument, defendant renewed his argument that the state had failed to prove a completed theft. The trial court then revisited its rationale for denying the MJOA and determined that it could not find defendant guilty beyond a reasonable doubt of theft of the other missing 22 boxes of computers. Given that determination, the trial court gave the parties additional time to research the degree of asportation, if any, required by the theft statute in relation to the five boxes that had been moved from inside the trap trailer to under that trailer. The parties agreed that the issue

---

[3] That determination is not at issue on appeal.

was one of first impression and were unable to identify any Oregon case law on point.

The trial court, relying on asportation cases in other jurisdictions, concluded that the slightest movement was sufficient to complete a theft under the statute:

> "I'm satisfied that the defendant completed the theft when he removed the boxes from the place where they had been placed by the owner, namely, the trailer, and placed them into another location where they would be concealed from immediate view in furtherance of his effort to remove the stolen property from the premises on which he was apprehended[.]"

The trial court consequently found defendant guilty of first-degree theft and second-degree criminal trespass, a lesser-included offense of the burglary charge.

On appeal, defendant challenges only the theft conviction, renewing his contention that the "takes" element under the theft statute, ORS 164.015, cannot be satisfied by only minimal movement of the property. Rather, defendant asserts, minimal movement of personal property, which is still on the owner's premises, constitutes only attempted theft. The state responds that defendant's contention is unpreserved and, in all events, fails on the merits. We reject the state's preservation argument but agree that defendant's challenge fails on the merits.

■ We begin by addressing whether defendant's contention on appeal is preserved. The state asserts that defendant's present contention is not reviewable, because defendant, in response to the trial court's inquiry, never proposed an alternative interpretation of "takes" for purposes of ORS 164.015. Defendant contends that the matter is preserved because he contended during colloquy on the MJOA, and again in his closing argument, that the circumstances in the instant case did not constitute a completed theft. We agree with defendant that the matter is preserved.

■ As we have consistently reiterated, our determination of whether a contention is preserved for our review is guided by the principles prescribed in *State v. Wyatt*, 331 Or

335, 15 P3d 22 (2000). Specifically, was the trial court sufficiently, specifically alerted to the pertinent error so as to permit the court "to consider and correct the error immediately, if correction is warranted"? *Id.* at 343. Or, as we phrased the pragmatic inquiry in *State v. Rumler*, 199 Or App 32, 41, 110 P3d 115 (2005), "[i]f we were to reverse based on [appellant's] argument, would the trial judge feel 'blindsided' by our ruling?" (Internal quotation marks omitted.)

Here, the answer to the latter question is clearly "no"—indeed, it was the trial court itself that raised the question as to the proper meaning of "takes." We note, further, that our obligation to correctly construe that statutory term is in no way impaired or constrained by defendant's failure to advance the proper—or, indeed, any—construction of the statute before the trial court. *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). Thus, the issue is preserved for our review.

We turn to the merits of defendant's appeal—and, specifically, the meaning of "takes" in the theft statute, ORS 164.015. Again, that statute provides, as pertinent:

> "A person commits theft when, with intent to deprive another of property or to appropriate property to the person or to a third person, the person:
>
> "(1) *Takes, appropriates, obtains or withholds* such property from an owner thereof[.]"

(Emphasis added.)

Defendant concedes on appeal that he had the requisite intent to deprive the owner of the property. He contends, however, that he only *attempted* to commit theft, *viz.*, that he did not complete the element of "takes, appropriates, obtains or withholds," because he did not successfully remove the boxes of computers from the premises or substantially interfere with the owner's rights in that property. The state does not contend that defendant appropriated, obtained, or withheld the property; rather, the state argues that defendant "took" the property, either because (a) the "takes" element is satisfied by a defendant's mere exercise of dominion

or control over the property of another without attendant movement; or (b) even if some movement is required, the "takes" element is satisfied by minimal movement of the property for a minimal period of time. Accordingly, we must therefore determine (1) whether the term "takes" requires asportation or "carrying away" of the property; and (2) if so, what distance the property must be "carried away" to satisfy that requirement.

The answer to both of those questions depends on the proper construction of "takes" under ORS 164.015(1). Accordingly, we apply the familiar principles of statutory construction explained in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), beginning with the text in context. At the first level of analysis, we consider not only the express definitions provided by the legislature but also the statutory framework and the preexisting common law within which the pertinent statutes were enacted. *Denton and Denton*, 326 Or 236, 241, 951 P2d 693 (1998). If, after examining the text in context, we conclude that the statute is capable of multiple constructions that are not "wholly implausible," we examine the legislative history and, if necessary, other aids to construction. *See Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994) (consulting legislative history when alternative interpretation not "wholly implausible").

We note, as preliminary background, that the legislature adopted ORS 164.015 in 1971 as part of an overall revision of the criminal code. In *State v. Cox*, 336 Or 284, 291-92, 82 P3d 619 (2003), the court explained the history of that revision:

"Before the 1971 revision, separate statutes described larceny, embezzlement, and other theft-related offenses. *See, e.g., former* ORS 164.310 - 164.392 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (larceny); *former* ORS 165.005 - 165.040 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (embezzlement); *former* ORS 165.045 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (receiving stolen property); *former* ORS 165.205 - 165.285 (1969), *repealed by* Or Laws 1971, ch 743, § 432 (obtaining property by false pretenses and fraud). Those statutes set out a variety of elements applicable to each offense and prescribed different—and at times

inconsistent—penalties, depending on the nature of the larcenous act, the nature of the stolen property, or other factors.

"ORS 164.015 eliminated the problems arising from those separate statutes by consolidating the various forms of unlawful property deprivation into a single offense of theft that does not depend on the relationship between the thief and the owner, the type of property, or the manner of deprivation."

(Citations omitted.)

We initially consider whether the term "takes" requires asportation or "carrying away" of the property. At common law, larceny required "the felonious taking *and carrying away* of the personal goods of another." 4 William Blackstone, *Commentaries on the Laws of England* 229 (1765) (emphasis added); *see also State v. Tauscher*, 227 Or 1, 21, 360 P2d 764 (1961) (common-law elements of larceny described as: "(1) trespassory (2) taking and (3) *carrying away* of the (4) personal property (5) of another (6) with intent to steal" (emphasis added) (quoting Rollin M. Perkins, *Criminal Law* 190 (1957)).

In contrast, although the text of ORS 164.015 refers to "takes," the statute does not include the phrase "carrying away." Thus, to construe ORS 164.015 as including a "carrying away" or asportation requirement, the term "takes" would have to encompass that requirement—or, alternatively, we would have to determine that the legislature codified the common-law elements of larceny into the theft statute.

We look first to the term "takes," which—unlike other operative terms in ORS 164.015[4]—is not statutorily defined. In the absence of a statutorily provided definition, we ordinarily assume that the legislature intended the words of the statute to carry their plain, natural, and ordinary meanings. *PGE*, 317 Or at 611. "Take" is pertinently defined as: (1) "to get into one's hand or one's hold or possession by a physical act of simple transference"; (2) "to convey, lead,

---

[4] *See, e.g.*, ORS 164.005(1) and (3), defining, respectively, "appropriate" and "obtain."

carry, remove, or cause to go along to another place, the direction of movement being away from the place from which the action is regarded"; (3) "to obtain possession[.]" *Webster's Third New Int'l Dictionary* 2330 (unabridged ed 2002). Thus, the term "takes," when construed in its plain and ordinary sense, contains multiple constructions that could support either party's proposed construction of that term for purposes of ORS 164.015.

Analysis of text also includes reference to well-established legal meanings for terms that the legislature has used. *McIntire v. Forbes*, 322 Or 426, 431, 909 P2d 846 (1996). "Takes" is a well-established legal term that has long held a place in the common law of larceny. *See Tauscher*, 227 Or at 21 (the fundamental elements necessary to constitute larceny at common law included a *taking*).[5] Consequently, our construction of the statute includes an examination of the preexisting common-law and statutory framework within which it was enacted. *State v. McCathern*, 211 Or App 171, 175, 154 P3d 130 (2007) (textual analysis includes examination of preexisting common-law and statutory framework within which the statute was enacted); *see also Tauscher*, 227 Or at 10 (common-law terms used in statutes are presumed to have been used in their common-law sense); *State v. Williams*, 127 Or App 574, 578-79, 873 P2d 471, *rev den*, 319 Or 274 (1994) (applying the common-law meaning of the term "enter" in reference to the crime of burglary under first level *PGE* analysis).

"Takes" is the transitive verb form of the gerund "taking." At common law, the term "taking" was synonymous with the term "caption," which occurred "when the actor secured dominion over the property of another[.]" *See* Model Penal Code § 223.2 comment 2 at 163-64 (noting that MPC § 223.2 replaces common-law larceny requirements of "'caption,' or taking" and "asportation" and describing those requirements). The concept of "taking" as a "caption" survives today. *See, e.g.,* Wayne R. LaFave, 3 *Substantive Criminal*

---

[5] In the common-law forms of the indictment for larceny, the phrase "steal, *take*, and carry away" covered the combined idea of intent, the taking, and the asportation. Joel Prentiss Bishop, 2 *Criminal Law* § 799(1), 610 n 1 (9th ed 1923) (emphasis in original).

*Law* § 19.3(a), 74 (2d ed 2003) (the "taking" element, some-times called a "caption," occurs when defendant secures dominion over another's property); 3 *Wharton's Criminal Law* § 357, 412-13 (15th ed 1995) ("To constitute larceny, there must be a taking or caption. * * * There is a caption when the defendant * * * exercises dominion and control over the property.").[6]

A "taking" at common law was an element distinct from the required "carrying away" or asportation element. *See Tauscher*, 227 Or at 21 (listing elements of common-law larceny). Thus, "taking" at common law did not, in and of itself, embody an asportation component.

Thus, if we were to assume that the legislature used the term "takes" in its common-law sense, that term would connote "caption," *viz.*, "secures dominion over the property of another." That construction of the term comports with the state's contention that a culpable "taking" does not require or include any asportation or "carrying away" of the property.

At *PGE*'s first level, all prior judicial constructions of ORS 164.015 are also pertinent to our inquiry. *See Union Bank of California v. Copeland Lumber Yards*, 213 Or App 308, 314, 160 P3d 1032 (2007) ("In our examination of the statute's text, we consider prior judicial construction of it."). We have twice previously—and, at least ostensibly, inconsis-tently—construed the term "takes" under ORS 164.015(1). In *State v. Jim / White*, 13 Or App 201, 508 P2d 462 (1973), we construed ORS 164.015 to determine whether an indictment that alleged only "theft," without identifying the particular alleged act ("takes, appropriates, obtains or withholds"), was sufficient to give the defendant notice of the crime with which he was charged. In holding that the indictment was suffi-cient, we stated:

" *'Takes' is the classical term used to define the act of com-mon law larceny.* Its meaning is included within the mean-ing of 'appropriate.' Likewise, 'obtain' is a term that is

---

[6] Somewhat confusingly, a "taking" sometimes also referred to the "trespass" requirement. *See* Bishop, 2 *Criminal Law* § 799(1) at 610 ("[C]ombining with the intent to steal, every larceny requires a trespass in the asportation—which is sometimes with less precision termed a 'taking.' "); 4 Blackstone, *Commentaries* at 230 (a " 'taking' * * * implies the consent of the owner to be wanting").

closely related to 'appropriate.' Webster's dictionary indicates that the definition of 'withhold' is contained within the definition of 'appropriate.' Thus, while ORS 164.015(1) describes 'theft' by using four words, the effect is clearly to define one single concept."

*Id.* at 218-19 (emphasis added). Accordingly, we determined that " 'theft' constitutes a single offense committed by the doing of an act that results in the 'appropriation' of the property of another" and that the state was not required to allege the particular conduct (takes, appropriates, obtains, or withholds) in the indictment; rather, alleging "theft" was sufficient. *Id.* at 220-21.

Thus, in *Jim / White*, we indiscriminately convoluted and conflated the four disjunctive behaviors that the legislature identified in ORS 164.015(1). Nonetheless, despite our statement in that case that the four terms "define one single concept," our ultimate construction of "takes" in *Jim / White* was that " '[t]akes' is the classical term used to define the *act of common law larceny*." 13 Or App at 218-19 (emphasis added). That is, in *Jim / White*, we did not state that "takes" in ORS 164.015(1) has the same content as the "takes" *element* for purposes of common-law larceny; rather, we stated that "takes" connoted "the *act* of common law larceny." *Id.* at 218 (emphasis added). The latter is much broader than the former because the "act" of common-law larceny required more than mere "taking"—*viz.*, the exercise of dominion or control—but *also* "carrying away" of that property. That construction would seem to support defendant's contention that asportation is required for a "taking"-based theft under ORS 164.015(1).

We later construed the term "takes" under ORS 164.015(1) in *State v. Schwartz*, 173 Or App 301, 316-17, 21 P3d 1128, *rev den*, 333 Or 162 (2001). There, the defendant was charged with computer crime, ORS 164.377(2)(c), which requires proof that the defendant's access to or use of the computer was "for the purpose of * * * [c]*ommitting theft* * * *." (Emphasis added.) We thus construed the meaning of "takes, appropriates, obtains or withholds" under ORS 164.015 to determine whether that defendant had such a purpose. 173 Or App at 316-17. The defendant argued that he

could not have "taken, appropriated, obtained or withheld" his employer's property because, although he copied his employer's password file and individual passwords onto his individual work computer, the passwords remained on his employer's computers. We rejected that argument. Specifically, after referring to several dictionary definitions of "takes," we stated that " 'take' might include more than just the transfer of exclusive possession that defendant proposes. For example, 'take' could include obtaining control of property, as defendant did with respect to the passwords and password file by copying them." *Id.* at 317. We then concluded that "the state presented sufficient evidence to prove that, by copying the passwords and password file, defendant took property of another * * * and that his actions, therefore, were for the purpose of theft." *Id.*

Our treatment of "takes" in *Schwartz*—in which there was, of course, no physical movement of the computerized information—comports with the understanding, urged by the state here, that a person can "take" the property of another, for purpose of ORS 164.015, without moving that property. Thus, some aspects of our analysis in *Schwartz* could be viewed as at least implicitly conflicting with aspects of *Jim / White.*

In truth, however, neither case affords much guidance—much less is dispositive of the question presented for our determination. In neither case were we asked to determine whether "takes" in ORS 164.015 incorporates an asportation requirement. Rather, our discussions in those cases were collateral to the central question here.[7]

---

[7] We note, moreover, that we have subsequently relied on *Jim / White* primarily for the limited proposition that an accusatory instrument may charge theft without specifying the particular kind of theft committed. *See, e.g., State v. Ripka,* 111 Or App 469, 473, 827 P2d 189, *rev den,* 313 Or 300 (1992) (relying on *Jim / White* for that proposition).

Although we have occasionally relied on *Jim / White* for the proposition that the four words describing the act of theft define one single concept, *see, e.g., State v. Gray,* 23 Or App 464, 468, 543 P2d 316 (1975) (citing *Jim / White* for the proposition that "the criminal act of 'theft' defined thereby is 'substantial interference with property rights or unauthorized control of property' as described by those four words used in ORS 164.015(1)"), we have never specifically relied on our particular construction of "takes" in *Jim / White.*

We turn, then, to the context in which the legislature used the term. We first consider the immediate context, which is the phrase or sentence in which the term appears.

ORS 164.015(1) employs the disjunctive phrase "[t]akes, appropriates, obtains or withholds[.]" Thus, "takes" is one of four alternative "triggers" for culpability and clues to its content might be discerned from the context of the other three. As noted, the legislature provided definitions of "appropriate" and "obtain" in ORS 164.005. Although the statutory definition of "obtain" is generally unenlightening,[8] the definition of "appropriate" is significant:

"(1) 'Appropriate property of another to oneself or a third person' or 'appropriate' means to:

"(a) *Exercise control over property of another*, or to aid a third person to *exercise control over property of another*, permanently or for so extended a period or under such circumstances as to acquire the major portion of the economic value or benefit of such property; or

"(b) Dispose of the property of another for the benefit of oneself or a third person."

ORS 164.005(1) (emphasis added).

The significance of that definition lies in the italicized phrase "[e]xercise control over property of another[.]" That portion of the definition of "appropriate" is essentially synonymous with the phrase "secures dominion over the property of another," *i.e.*, the common-law element of "caption" or "taking." *See* 223 Or App at 684 (analyzing common-law meaning of "taking"). Thus, if we were to assume that the legislature intended the term "takes" in ORS 164.015(1) to have its common-law content, "appropriates" in ORS 164.015(1) would be merely a subset of "takes" as used in the same statute. Both would connote the exercise of dominion or control over the property of another—but "appropriates" is narrower and qualified by the requirement that the control over the property be "permanent[ ] or for so extended a period or under such circumstances as to acquire the major portion

---

[8] ORS 164.005(3) defines "obtain" as follows: " 'Obtain' includes, but is not limited to, the bringing about of a transfer or purported transfer of property or of a legal interest therein, whether to the obtainer or another."

of the economic value or benefit of such property[.]" ORS 164.005(1)(a). Given that, as so construed, "takes" is less restrictive than "appropriates." There is no reason why the state would not simply prove every "appropriates" theft as a "takes" theft—and thereby avoid the necessity of proving the additional restrictive elements (*e.g.*, acquisition of a "major portion of the economic value or benefit of such property") of the former.

In sum, if "takes" in ORS 164.015(1) has its common-law meaning, "appropriates" is nugatory. And yet, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage. ORS 174.010; *State v. Stamper*, 197 Or App 413, 418, 106 P3d 172, *rev den*, 339 Or 230 (2005).

We also look to the broader context of a statute, which includes prior versions of the statute and prior judicial construction thereof. *Id.* at 419. Prior to the consolidation of the larceny-type offenses into the current crime of theft in 1971, larceny was a distinct crime by statute. The larceny statute, originally enacted in 1864, Or Laws 1864, ch 44, § 547, provided:

> "If any person shall *steal* any goods or chattels, or [here follows an enumeration of specific articles of property made subject to the offense], the property of another, such person shall be deemed guilty of larceny[.]"

General Laws of Oregon, Crim Code, ch 44, § 547, p 536 (Deady 1845-1864) (emphasis added).[9] Although the statute was later subjected to amendments that affected the specific types of property made subject to the offense and the applicable penalties, *see* Or Laws 1865, § 1, p 22; Or Laws 1905, ch 21, § 1; Or Laws 1951, ch 90, § 1, the relevant portions of the statute remained unchanged until 1957.

Thus, the iterations of the larceny statutes from 1864 to 1957 used the term "steal"—but not "takes *and carries away*." Nevertheless, the Supreme Court construed that language as encompassing all the elements of common-law larceny. *State v. Dooley*, 102 Or 563, 564-65, 203 P 304 (1922)

---

[9] The remainder of the statute, prescribing penalties, is not relevant to our discussion.

("All of the essential features which were necessary to establish larceny at common law are still requisite to sustain a conviction under this statute * * *."). Accordingly, at least until 1957, asportation, although not referred to in the text, was an element of statutory larceny. *See State v. Broom et al.*, 135 Or 641, 648, 297 P 340 (1931) ("It is established law in our jurisdiction that, in order to secure a conviction [for larceny], it is necessary for the state to prove beyond a reasonable doubt that the property was taken *and carried away* with felonious intent, to deprive the owner permanently of his property." (Emphasis added.)); *State v. Moss*, 95 Or 616, 628, 182 P 149 (1919), *modified on recons*, 188 P 702 (1920) (requiring asportation as an element of statutory larceny).

The larceny statute was eventually codified as *former* ORS 164.310 (1953), *repealed by* Or Laws 1971, ch 743, § 432.[10] In 1957, the legislature amended that statute to provide, in part:

"(1) Any person who *steals* the property of another, or who willfully *takes, carries, leads or drives away* the property of another with the intent to deprive such other of such property permanently, or who knowingly and designedly, by any false or fraudulent oral, written or other representation or pretense, defrauds another of property, is guilty of larceny[.]"[11]

Or Laws 1957, ch 653, § 1 (emphasis added). Two features of that statute are notable. First, it treated "steals the property of another" as being distinct from "willfully takes, carries,

---

[10] The offense of larceny has been codified in the following statutes: *Former* ORS 164.310; OCLA § 23-519 (1940); Oregon Code, title XIV, ch 3, § 14-315 (1930); Oregon Laws, title XIX, ch III, § 1947 (1920); Lord's Oregon Laws, title XIX, ch III, § 1947 (1910); The Codes and Statutes of Oregon, title XIX, ch III, § 1798 (Bellinger & Cotton 1901); The Codes and General Laws of Oregon, ch III, title II, § 1763 (Hill 2d ed 1892); The Codes and General Laws of Oregon, ch III, title II, § 1763 (Hill 1887); General Laws of Oregon, Crim Code, ch III, § 552, p 413 (Deady & Lane 1843-1872); General Laws of Oregon, Crim Code, ch 44, § 547, p 536 (Deady 1845-1864).

[11] *Former* ORS 164.310 was amended in 1959 to remove the following language:

"* * * or who knowingly and designedly, by any false or fraudulent oral, written or other representation or pretense, defrauds another of property * * *."

Or Laws 1959, ch 302, § 2.

leads or drives away the property of another" with the requisite intent. Second, although the syntactic function of "away" in the second phrase was arguably ambiguous—*viz.*, did it refer only to "drive" or also to each of the preceding verbs (*e.g.*, "takes * * * away," "carries * * * away")—it treated "takes" and "carries" as discrete, and independently sufficient, acts. In all events, the Supreme Court, in cases applying that version of the theft statute, concluded that, although the larceny statute was expanded to include property that had not been the subject of larceny at common law, "the fundamental elements necessary to constitute larceny at common law are preserved by statute in Oregon." *Tauscher*, 227 Or at 21. In so holding, the Supreme Court cited *Dooley*, which, as noted, construed the pre-1957 version of the statute.

Thus, the common-law elements of larceny were preserved by statute, even when the text did not refer to those elements, at least up to the time the legislature revised the criminal code in 1971. That is, the pre-1971 statute required both "taking" (caption) *and* "carrying away" (asportation). If the statutory scheme had not been substantially amended, that would be conclusive as to the necessity that the state prove at least some movement of the property. *See generally State v. Ford*, 310 Or 623, 637 n 21, 801 P2d 754 (1990) (statutes codifying the common law are to be construed in a manner consistent with the common law, absent clear legislative intent to the contrary).

But the statutory scheme was completely revised in 1971, rendering the preexisting statutory and common-law framework instructive, but not conclusive. In enacting ORS 164.015 in 1971, the legislature did not use the term "larceny"; rather, the legislature created a new crime—"theft." Further, the legislature created new and distinctive conduct-based "triggers" for culpability under that statute and enacted new operative definitions. Nevertheless, the legislature is presumed to have been aware of the prior use of the term "takes" in the versions of the larceny statute in effect from 1957 to 1971 and of judicial constructions of prior statutes as codifying the elements of common-law larceny. Thus, the legislature's decision to use the term "takes" in ORS

164.015(1), in the context of the history of the use of that term in the superseded larceny statutes, cannot be ignored.

The broader context of a statute also includes other statutes *in pari materia*, that is, on the same general subject. *See Stamper*, 197 Or App at 418 ("[T]he rationale being that, in the absence of evidence to the contrary, it is safe for us to assume that the legislature employs the same terms consistently throughout related statutes."); *see generally PGE*, 317 Or at 611 (where the legislature uses the same term in related statutes, the court infers that the term has the same meaning).

The state contends that other criminal statutes contextually demonstrate that "takes" does not, by itself, require movement of the item. Specifically, the state points to ORS 163.225(1), which defines the crime of kidnapping in the second degree:

"(1)   A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a)   *Takes the person from one place to another*[.]"

(Emphasis added.)

The Supreme Court has construed the phrase "[t]akes the person from one place to another" as an "asportation" element. *See State v. Wolleat*, 338 Or 469, 473, 111 P3d 1131 (2005) ("[M]oving a victim 'from one place to another' will be sufficient to establish the element of asportation."). The state contends that the legislature's inclusion of the language "from one place to another" is highly instructive: It asserts that, because the legislature expressly included that language, explicitly describing movement in addition to "takes" in the kidnapping statute, the omission of that language from the theft statute must be regarded as purposeful.

The state is correct that, ordinarily, when the legislature includes an express provision in one statute, but omits such a provision in another statute, it can be inferred that such an omission was deliberate. *Oregon Business Planning*

*Council v. LCDC*, 290 Or 741, 749, 626 P2d 350 (1981). However, and contrary to the state's contention, the use of "takes" in the kidnapping statute as construed by our Supreme Court, connotes movement. *See State v. Murray*, 340 Or 599, 136 P3d 10 (2006).

In *Murray*, the Supreme Court, in determining that the state had failed to prove the requisite asportation for purposes of ORS 163.225(1)(a), concluded:

> "[D]efendant did not 'take' [the victim] anywhere or, even if he did, the distance that [the victim] moved was not 'substantial,' *i.e.*, was not 'from one place to another.' "

*Id.* at 606. Thus, as used in the kidnapping statute, "takes" embodies the *movement* or asportation—and "from one place to another" describes the required qualitative degree of *distance* of that asportation.

The Supreme Court's construction of ORS 16.225(1)(a) is consistent with the qualitatively different forms of asportation required under common-law larceny and the kidnapping statute. The asportation element in the kidnapping statute requires substantial movement. *Murray*, 340 Or at 606-07. Conversely, asportation under common-law larceny did not require movement from *one place to another*—rather, the slightest movement from the place the property occupied was sufficient. 4 Blackstone, *Commentaries* at 231; *see also* Bishop, 2 *Criminal Law* § 794(2) at 606 (at common law, asportation required such a removal of the property "that every part of the physical substance will have changed its place, but it [was] immaterial how slightly, or whether or not it [was] taken away from the owner's premises, or for how brief a time the control continue[d]"); W. M. L. Clark, *Handbook of Criminal Law* § 104, 260 (1894) ("[T]he slightest removal will suffice. It is sufficient if the property is reduced to the thief's absolute control, even for an instant."). Thus, the words "from one place to another" in ORS 163.225(1)(a) connote that the minimal movement that was sufficient for certain common-law crimes (including larceny) does not establish culpability under the kidnapping statute.

We pause, briefly, to summarize our statutory construction inquiry to this point. At *PGE*'s first, "text in context" level, "takes" as used in ORS 164.015(1) is reasonably, plausibly susceptible to either of two constructions. On one hand, as the state suggests, "takes" could be read to mean that a defendant merely need secure dominion or control over the property, without any attendant or consequential movement of the property. That reading would comport with the common law's treatment of "takes" and "carries away" as distinct elements. However, as noted, that reading would largely, perhaps entirely, render "appropriates" in ORS 164.015(1) superfluous and would indirectly conflict with the Supreme Court's construction of "takes" in *Murray*.

Conversely, "takes" could require not only dominion and control, but also some movement or asportation of the property. That reading would be consistent with the history of asportation as an element of common-law larceny as codified in the antecedent (but superseded) larceny statutes, would maintain a distinction between "takes" and "appropriates" as disjunctive or alternative "triggers" in ORS 164.015, and would also be consistent with the use of "takes" in the kidnapping statutes, as construed in *Murray*.

Defendant's proposed construction—at least to the extent it requires *some* asportation—is considerably more compelling. However, the state's construction is not "wholly implausible"; accordingly, we turn to the legislative history of ORS 164.015. *Owens*, 319 Or at 268.

As noted, the 1971 legislature enacted the theft statute as part of a comprehensive revision of the state's criminal code. *See* Or Laws 1971, ch 743, § 123 (enacting theft statute); *see generally Cox*, 336 Or at 291-92 (describing history of ORS 164.015). The theft statute consolidated the previous distinct crimes of larceny, embezzlement, and other larceny-type offenses.

The Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 123(A), 132 (July 1971) (Commentary), explains that "[t]he primary purpose of [ORS 164.015] is to eliminate the traditionally distinct crimes of larceny, larceny by trick,

embezzlement, obtaining property by false pretenses, receiving stolen property and extortion and to consolidate them into one crime called 'theft.' "

The legislature thus sought to modernize Oregon's theft-related offenses by consolidating statutes with previously confusing and archaic distinctions based on common-law concepts and creating a single new modern crime: theft. As the Commentary explains:

> "A substantial body of case law exists in which the Oregon Supreme Court has grappled with the distressing problems created by our archaic theft statutes and related provisions. The structure of the Oregon statutes, inherited as it was from the old common law, retains today distinctions that are not only meaningless in a modern society, but are also unnecessary handicaps to effective administration of the laws."

Commentary § 123(C) at 132.

The legislature's intent to disengage from the common law is evidenced by its careful avoidance of common-law language or concepts in the new theft statute. Oregon's theft statute was derived from New York Revised Penal Law § 155.05. Commentary § 123(B) at 132. That statute provides as follows:

> "1. A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof.

> "2. Larceny includes a wrongful taking, obtaining or withholding of another's property, with the intent prescribed in subdivision one of this section, committed in any of the following ways:

> "(a) *By conduct heretofore defined or known as common law larceny by trespassory taking, common law larceny by trick, embezzlement, or obtaining property by false pretenses*[.]"

(Emphasis added.) The Oregon legislature, in enacting ORS 164.015, specifically avoided adopting language from the

New York statute that could possibly be construed as retaining the old common-law crimes. Again, as the Commentary explains:

> "The basic definition of theft is similar to New York Revised Penal Law § 155.05, *although, contrary to that code, the enumeration of the old crimes of larceny, larceny by trick, embezzlement and obtaining by false pretenses as ways of committing theft has been purposely avoided. The Commission hopes thereby to preclude the implication that any of the artificial technicalities of these crimes are being retained.*

> "Following the example of the Model Penal Code and several other states, we have attempted to abolish completely the labels and highly technical distinctions between the various larceny-type offenses and propose to codify them into one comprehensive theft statute."

Commentary § 123(B) at 132 (emphasis added).

Thus, the legislature did not intend ORS 164.015 to codify common-law larceny. Rather, the legislature explicitly jettisoned the common-law larceny-type offenses and created a new and modern offense called "theft."

However, while disavowing the "artificial technicalities" of distinctions among common-law larceny-type offenses, other portions of the Commentary make clear that the legislature also intended to retain particular features of common-law larceny. For instance, the legislature clearly intended to retain the common-law concept of intent to permanently deprive that was a feature of common-law larceny:

> "Subsections (1) and (2) define 'appropriate' and 'deprive,' both fundamental to a definition of the requisite intent * * *. *These definitions retain the traditional distinction between larceny and some other offenses* which, though similar, do not reach the stature of larceny because of a lesser intent to obtain temporary possession or use of the property or to cause temporary loss to the owner."

Commentary § 121 at 130.

Finally, and dispositively, the Commentary's explanation of the broad definition of "obtain," ORS 164.005(3), leaves no doubt that, by negative contrast, the legislature

intended to retain asportation of property as a component of theft by "taking" under ORS 164.015:

> "The definition of 'obtain' in subsection (3) *extends the concept of a taking* to include the constructive acquisition of property, and is consistent with the ensuing definition of 'property,' which includes real property. *Asportation or 'carrying away' of the property is not required."*

Commentary § 121 at 130 (emphasis added). Bluntly, although "obtain"—which could pertain to real property—does not require "[a]sportation or 'carrying away' of the property," "taking" includes that requirement.

We thus conclude that "takes," for purposes of ORS 164.015, requires, in addition to securing dominion or control over the personal property of another, some movement of that property.

What is the degree of movement sufficient to satisfy that asportation requirement? Defendant contends that the property taken must be removed from the owner's premises. The state counters that minimal movement, even within the owner's premises, is sufficient. We agree with the state.

As noted, *see* 223 Or App at 693, at common law, asportation required such a removal of the property that every part of the physical substance will have changed its place—but it was immaterial how slightly, or whether or not it was taken away from the owner's premises, or for how brief a time the control continued. Bishop, 2 *Criminal Law* § 794(2) at 606; *see also* Clark, *Handbook of Criminal Law* § 104 at 260 ("[T]he slightest removal will suffice. It is sufficient if the property is reduced to the thief's absolute control, even for an instant.").

The modern understanding of asportation is no different. *See* LaFave, 3 *Substantive Criminal Law* § 19.3(b) at 75-76 ("The distance 'away' which the property must be moved need not be substantial—a slight distance will do. * * * [S]o long as the defendant moves every part of [the property], it is not necessary to move it away from the owner's premises or from his presence."). Indeed, under New York Revised Penal Law § 155.05, from which ORS 164.015 was derived, a minimal asportation of the property is sufficient to

satisfy the "taking" element of that statute. *See, e.g., People v. Olivo*, 52 NY 2d 309, 318, 420 NE 2d 40, 43-44 n 6 (1981) (the "movement, or asportation requirement has traditionally been satisfied by a slight moving of the property. This accords with the purpose of the asportation element which is to show that the thief had indeed gained possession and control of the property" (citations omitted)); *People v. Yusufi*, 247 AD 2d 648, 649, 669 NYS 2d 66, 67-68, *rev den*, 699 NE 2d 454 (NY App Div 1998) (property need not be moved from the owner's premises for the defendant to gain the requisite dominion and control; slight movement of the property constitutes sufficient asportation).[12]

Defendant identifies no jurisdiction, and we are aware of none, that requires more than slight movement to constitute sufficient asportation. *Cf. Mauldin v. State*, 376 So 2d 788, 792, *rev den*, 376 So 2d 793 (Ala Cr App 1979) (immaterial how short the distance the chattel was moved); *People v. Lardner*, 300 Ill 264, 267, 133 NE 375, 376 (1921) (taking goods and putting into convenient place for removal is the taking of property, even if detected before removed from owner's property); *State v. Rozeboom*, 145 Iowa 620, 627-28, 124 NW 783, 786 (1910) (carrying or moving in the slightest degree from the place where the defendant finds it completes the asportation).

■    We thus conclude that the asportation component of "takes" in the theft statute, ORS 164.015, is satisfied by any movement of the property, however slight. It is immaterial how far the property is moved—much less whether it is removed from the owner's premises—so long as it is moved in the slightest degree from the place where a defendant finds it.

■    In this case, defendant concedes that he removed five unopened boxes of computers from inside Central Freight Lines' trap trailer and placed them on the ground under the trailer with the requisite intent to deprive the owner of those

---

[12] The "takes" element of the New York statute may be satisfied without any asportation of the property where the property alleged to be taken is an automobile. *See, e.g., People v. Alamo*, 34 NY 2d 453, 460, 315 NE 2d 446, 450 (1974) (asportation not necessary to a finding of the primary elements of dominion and control where an automobile is concerned).

computers. Given those facts, a rational trier of fact could have found beyond a reasonable doubt that defendant committed theft by "taking"—that is, he exercised dominion or control over the property of another and physically moved that property, however slightly.

The trial court correctly denied the motion for judgment of acquittal.

Affirmed.