Argued and submitted September 20, 2007, affirmed February 13, petition for review allowed May 29, 2008 (344 Or 558)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN KEITH WALCH,
*Defendant-Appellant.*

Clatsop County Circuit Court
041108; A127510

178 P3d 301

George W. Kelly argued the cause and filed the brief for appellant.

Joanna L. Jenkins, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Schuman, Judge, and Deits, Judge pro tempore.

SCHUMAN, J.

## SCHUMAN, J.

For his participation in acts surrounding a violent encounter with one of his acquaintances, defendant was convicted of kidnapping in the first degree, ORS 163.235; robbery in the first degree, ORS 164.415; and assault in the fourth degree, ORS 163.160. On appeal, he argues that the trial court erred in denying his motion for a judgment of acquittal on the kidnapping charge, in refusing to give a lesser-included offense instruction as to the robbery charge, and in imposing consecutive sentences. We affirm.

Because the jury found defendant guilty, we state the facts in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 125, 873 P2d 316 (1994). On the night of March 15, 2004, the victim in this case was visiting a friend, Jeremy. She decided to telephone another friend, Amanda, and arrange for delivery of $50 worth of methamphetamine. During the conversation, the victim mentioned that she had $350 on her person.

Defendant was among the people who delivered the drugs and, along with the victim and others, he consumed some of them. Later that night, having learned that the victim still had most of her cash, defendant returned. He was in Amanda's car. Employing a ruse, the details of which are not relevant to this appeal, defendant had an accomplice lure the victim out of Jeremy's house to look at the car to see if it had been damaged in an accident. She did so. Returning to the house, she heard a rustling in the bushes. Defendant emerged. He positioned himself behind the victim and put her in a choke hold, and then he pushed her to the ground. He then rolled her over and began strangling her from the front.

During the course of the struggle, defendant dragged the victim five to 15 feet to the side of the car. When she tried to stand up, he leaned over her back and kept her bent down. She asked why he was attacking her, and he said, "I want your money, bitch. Give me your money." She then fell to the ground. He picked her up and put her into the trunk of the car, but he was unable to close it because she locked her knees. Instead, he then threw her out of the trunk

and demanded that she go into the house and bring him her money.

By that time, the victim had a large gash on her head, along with several scrapes and bruises. She stumbled back into the house. When she did not return to the car, defendant left. Inside, friends cleaned her up and took her to the hospital, where she related the evening's events to police officers. They later found and arrested defendant in an apartment, where they also found $250 in cash. When the police arrested defendant, his hands were red and swollen, and there was a cut on his knuckle. In a taped conversation to his wife from the Clatsop County Correctional Facility, defendant admitted that he "put [the victim] in a headlock. And she bumped her head when [he] tried to stick her in the trunk. She got a couple of cuts on her head, and a bloody nose from a headlock."

After the close of the state's evidence, defendant moved for a judgment of acquittal on the ground that the movement of the victim was not substantial enough to constitute kidnapping. The trial court denied defendant's motion, and he renews it on appeal. We review the trial court's denial of a motion for a judgment of acquittal to "determine whether, viewing the evidence in the light most favorable to the state, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Cervantes*, 319 Or at 125.

Kidnapping in the first degree as charged in this case is the same as kidnapping in the second degree, with the added element that the purpose of the kidnapping is to cause physical injury to the defendant. ORS 163.235(1)(c). Kidnapping in the second degree, in turn, is defined as follows:

"(1)   A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person

"(a)   Takes the [other] person from one place to another[.]"

ORS 163.225. Thus, to defeat defendant's motion for a judgment of acquittal, the state had to present evidence from

which a rational juror could find that defendant "(1) took the victim from one place to another; (2) with the intent to interfere substantially with her personal liberty; (3) without consent or legal authority; and (4) with the purpose of physically injuring her." *State v. Wolleat*, 338 Or 469, 471, 111 P3d 1131 (2005).

In the present case, physical injury and lack of consent are not at issue. The focus is the physical act of moving the victim "from one place to another," and the mental state of "intent to interfere substantially with [the victim's] personal liberty." The Supreme Court's recent cases dealing with those elements do not present an easily applied analysis. In *Wolleat*, the court explained that to satisfy the physical "movement from one place to another" or "asportation" element, the state need not prove "that a defendant [took] a victim a specific distance, nor does it require that the distance be substantial." 338 Or at 473. On the other hand, the state does have to prove actual movement of some sort; intention to move the victim is itself not sufficient to prove asportation.

However, the second element—"intent to interfere substantially with [the victim's] personal liberty"—obviously can be met without actual interference; intention alone is sufficient. *Id.* Further, "in order for the interference to be substantial, a defendant must intend either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.'" *Id.* at 475. Thus, under *Wolleat*, the asportation element is met by any actual movement, but to meet the "intent to interfere" element, the state needs to prove intent to move a substantial distance. *Wolleat* does not offer any guidance as to what a substantial distance is other than to conclude, based on some examples appearing in the kidnapping statute's legislative history, that moving the victim 15 to 20 feet from the bedroom of a home to the living room while committing another crime was *not* substantial. "[T]hat movement is not sufficient, by itself, to give rise to an intent to interfere substantially with the victim's liberty * * *." *Id.* at 478.

In *State v. Murray*, 340 Or 599, 136 P3d 10 (2006), the court confronted the question whether a car hijacker moved the driver "from one place to another" when he pushed her from the driver's seat to the front passenger's seat or

drove a few feet before pushing her out. *Id.* at 603. The court held, as it did in *Wolleat*, that the state had to prove movement of a substantial distance, but—contrary to *Wolleat*—it held that such proof was necessary in order to establish the *physical act* of moving the victim from one place to another. *Id.* at 606 (equating movement "from one place to another" with "substantial" movement). The court concluded that the state had failed to prove that the defendant moved the victim from one place to another because he pushed her out of the car before he moved it, and further, that if he did move her, the distance was not substantial. Thus, neither the distance from one seat to another nor the few feet that the defendant might have driven with the victim in the car was "substantial." On that basis, the court reversed the defendant's conviction. *Id.* at 607. The court did not address the "intended to substantially interfere" element of kidnapping. *Id.* at 603 ("This case turns entirely on whether a rational finder of fact could conclude * * * that defendant had 'take[n]' [the victim] 'from one place to another.' ").

■      Thus, *Wolleat* addresses the "intent to interfere substantially" element and concludes that it requires proof of intent to move a substantial distance. *Murray* addresses the "one place to another" element and concludes that it requires proof of actual substantial movement. In the present case, it is clear that the evidence and reasonable inferences drawn from it support the finding that, when defendant put the victim in the trunk and tried to close it, he intended to move her a substantial distance from one place to another—that is, he intended to drive away with her. Indeed, that is almost the only inference one might draw from the evidence. Thus, under *Wolleat*, the "intent to interfere" element is met, and *Murray* does not disturb that conclusion because it simply does not address the "intent to interfere" element. The issue thus reduces to the "one place to another" element. *Murray* could be seen as supporting defendant's position with respect to that element. As noted, *Murray* equates movement from "one place to another" with "substantial" movement, and holds that neither movement from the driver's seat to the passenger's seat nor movement of a few feet in a car qualifies.

■      We conclude, however, that the movement in the present case was substantial. In *Murray*, the court noted,

"the 'place' in which something or someone may be found and from which that something or someone may be taken is situational and contextual. It is, among other things, a function of the object to be moved, as well as a function of the area in which the movement occurs."

340 Or at 606. Defendant moved the victim, a human being, from a driveway—a place where one might park a car, carry on a conversation, or from which one might walk away—to the inside of a car trunk, a place in which a human being could be put for almost no innocent purpose. In this "situation[ ] and context[ ]," *id.*, the two places are different, even if they happen to be located within a few feet from each other. Because *Murray* teaches that movement from one place to another is "substantial" movement, and defendant moved the victim from one place to another, we conclude that the movement here was also substantial, despite the fact that the actual distance, as measured in feet and inches, might be less than the distance the court found to be insubstantial in *Wolleat* and *Murray*. Thus, the state presented evidence from which a jury could find all of the elements of kidnapping in the first degree, and the court did not err in denying defendant's motion for a judgment of acquittal.

■■ In his second assignment of error, defendant argues that the court should not have denied his request to instruct the jury on second-degree robbery. According to defendant, second-degree robbery is a lesser offense included within first-degree robbery. We disagree. That is not the law. "To require an instruction on a lesser-included offense, the lesser offense must *necessarily* be subsumed in the greater offense in all cases." *State v. Lee*, 174 Or App 119, 127, 23 P3d 999 (2001) (emphasis in original). The elements of second-degree robbery are not necessarily subsumed in the elements of first-degree robbery. *State v. Zimmerman*, 170 Or App 329, 334, 12 P3d 996 (2000) (so holding). It is true that "second-degree robbery may be treated as a lesser-included offense of first-degree robbery if the accusatory instrument recited sufficient facts to satisfy each element of second-degree robbery." *Id.* That is not the case here. The indictment in this case alleged that defendant committed first-degree robbery as follows:

"The defendant * * * did unlawfully and knowingly use physical force upon [the victim] and did attempt to cause serious physical injury to [the victim], while in the course of committing theft of property, to-wit: money, with the intent of preventing and overcoming resistance to the said defendant's taking of the said property and retention of the said property after the taking of the said property[.]"

Second-degree robbery contains, as one of its elements, the requirement that a person either "[r]epresents by word or conduct that the person is armed with what purports to be a dangerous or deadly weapon" or is "aided by another person actually present." ORS 164.405(1). Thus, the indictment did not set forth all of the elements required for second-degree robbery.

Finally, defendant argues in his third assignment of error that the trial court's imposition of consecutive sentences was unconstitutional in two respects, both derived from the United States Supreme Court's decisions in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004). First, he argues that the facts justifying imposition of consecutive sentences had to be proved to the jury beyond a reasonable doubt and, although the facts here were found by the jury, the jury was not instructed regarding the reasonable doubt standard. Second, he argues that the state was required to have pleaded the facts supporting consecutive sentences in the indictment. We address the contentions in turn.

Under ORS 137.123(4), where (as here) a defendant has been convicted of more than one offense "arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent" unless the court finds:

"(a)   That the criminal offense for which a consecutive sentence is completed was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

> "(b)   The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

ORS 137.123(5). Under *Apprendi*, the predicate facts must be found by the jury, and they must be found beyond a reasonable doubt. *Apprendi*, 530 US at 496-97; *State v. Ice*, 343 Or 248, 170 P3d 1049 (2007) (applying *Apprendi* and *Blakely* to facts underlying imposition of consecutive sentences).

■      In the present case, defendant argues that the court erred in not instructing the jury regarding the reasonable doubt standard. However, defendant did not timely raise that objection. After the jury returned its guilty verdict, the trial court discussed with both parties the special verdict that it planned to submit to jurors regarding consecutive sentences. During that discussion, defendant's attorney suggested different ways to phrase the question on the special verdict form so that the verdict would be clear. Defendant's attorney never suggested that the special verdict question needed to state that the predicate facts had to be found beyond a reasonable doubt, nor did he object to the trial court's final phrasing of the question. The trial court submitted the following question to the jury:

> "Was the crime of kidnapping in the first degree an indication of defendant's willingness to commit more than one criminal offense? A mere incidental violation of a separate criminal offense would result in a no answer."

The necessary number of jurors answered "yes." It was not until a month later, at the sentencing hearing, that defendant's attorney argued for the first time that the special verdict was erroneous because it did not require the jurors to make their finding beyond a reasonable doubt. That objection was not timely, and therefore was not preserved.

We can review an unpreserved claim of error only if we determine that the error is apparent on the face of the record. ORAP 5.45(1); *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381, 823 P2d 956 (1991). We make that determination

by applying the law as it exists at the time we decide the appeal. *State v. Jury*, 185 Or App 132, 136-37, 57 P3d 970 (2002), *rev den*, 335 Or 504 (2003).[1] Thus, although the trial in this case preceded the decision in *Ice*, in which the court held that the facts supporting imposition of consecutive sentences under ORS 137.123 must be found by a jury beyond a reasonable doubt, that holding applies here.

■      However, it is not apparent that the jury was *not* properly instructed under the rule announced in *Ice*. Although the special verdict question did not mention the applicable burden of proof, the trial court's instructions to the jury at the beginning of the trial were arguably sufficient to instruct the jury that all facts, including the facts at issue at sentencing, had to be found beyond a reasonable doubt. During the preliminary instructions, the trial court instructed the jurors:

> "*So the burden in this case is on the State of Oregon to prove the defendant's guilt beyond a reasonable doubt.*
>
> Some of you may have been jurors in other types of cases, particularly civil cases where you heard the standards of proof such as proof by a preponderance of the evidence or proof by clear and convincing evidence. In a criminal case, though, the *State's proof must be more convincing.* And, again, *it's proof beyond a reasonable doubt.*"

(Emphases added.) Because the trial court did not explicitly instruct the jury that the special verdict finding had to be made beyond a reasonable doubt, the trial court may have erred. That error, however, is not apparent—that is, "obvious, not reasonably in dispute," *Ailes*, 312 Or at 381— because the trial court's preliminary instructions notified jurors that the state had to prove its case beyond a reasonable doubt. Accordingly, we do not address that claim of error.

---

[1] We acknowledged in *Jury* that applying the "law existing at the time of the appeal can lead to ostensibly incongruous results: A trial court can be reversed for 'plain error,' when its ruling comported with—or even was compelled by—the law existing at the time the court ruled." 185 Or App at 136. Nevertheless, we concluded that the law existing at the time of the appeal is the correct law to apply. *Id.* at 136-37.

■     Defendant also argues that his sentence is unlawful because the indictment by which he was charged did not state the facts required to support imposition of consecutive sentences. *See Apprendi*, 530 US at 476 (holding that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment"). In *State v. Sawatzky*, 339 Or 689, 698-99, 125 P3d 722 (2005), the Supreme Court held that the indictment need not include "aggravating or enhancing factors necessary for the imposition of a sentence that exceeds the presumptive range" if the defendant has timely notice of the state's intention to seek enhancement, as well as "the opportunity to exercise his or her jury trial right." Here, defendant received a jury trial on the sentencing facts, and there is no contention that he did not receive timely notice of the state's intention. And, although the court in *Sawatzky* was concerned with "aggravating or enhancing factors," we see no reason, in light of *Ice*, to draw any distinction between those factors and the facts supporting consecutive sentences. The trial court did not err in imposing consecutive sentences.

Affirmed.