Argued and submitted November 12, 2008, decision of Court of Appeals and
judgment of circuit court affirmed July 16, 2009

STATE OF OREGON,
*Respondent on Review,*

*v.*

JUSTIN KEITH WALCH,
*Petitioner on Review.*

(CC 041108; CA A127510; SC S055830)

213 P3d 1201

George W. Kelly, Eugene, argued the cause and filed the brief for petitioner on review.

Joanna J. Jenkins, Assistant Attorney General, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

BALMER, J.

Gillette, J., dissented and filed an opinion in which De Muniz, C. J., and Durham, J., joined.

## BALMER, J.

The issue in this criminal case is whether evidence that defendant dragged the victim 15 feet and forced her into the trunk of a car is sufficient to show that defendant moved the victim "from one place to another" as that phrase is used in the kidnapping statute, ORS 163.225(1)(a), or if the state instead must prove that defendant moved the victim a "substantial distance." The trial court determined that the jury could have found that defendant had moved the victim from one place to another and denied defendant's motion for a judgment of acquittal. Defendant appealed, and the Court of Appeals affirmed. *State v. Walch*, 218 Or App 86, 178 P3d 301 (2008). We allowed review and now affirm, although we do so for reasons somewhat different than those relied upon by the Court of Appeals.

Because the issue arises on a motion for judgment of acquittal, we state the facts in the light most favorable to the state. *State v. Fries*, 344 Or 541, 543, 185 P3d 453 (2008). At approximately 9:00 p.m. on March 15, 2004, the victim arrived at her friend Jeremy's house. The victim contacted another friend, Amanda, and arranged to purchase $50 worth of methamphetamine; the victim mentioned to Amanda that she had $350 in cash with her. Sometime later, Amanda, her friend Robert, and some other acquaintances arrived at the house. The victim gave Amanda the money to purchase the drugs, and the group left. Later that evening, defendant and Robert returned to the house with the drugs that the victim had purchased. The victim, Robert, and defendant shared the drugs, and the two men left.

At around 3:30 a.m., Robert and defendant returned to the house. Robert came into the house and told the victim that he had been in an accident in Amanda's car, which the two men had been driving that night. Robert phoned Amanda, spoke with her privately for a few minutes, and then told the victim that Amanda wanted to speak with her. Amanda asked the victim to go outside and look at her car, because she did not believe that Robert had been in an accident. The victim walked outside, looked at the car, and determined that there was no damage.

After looking at the car, the victim turned to walk back toward the house but heard a rustling in the bushes. Defendant emerged from the bushes; he put the victim in a chokehold, pushing her to the ground. Eventually, defendant turned the victim over and began strangling her with his hands. In the course of the struggle, defendant dragged the victim five to 15 feet toward the car. The victim regained her footing and asked why defendant was attacking her; he responded "I want your money." Although she had her money in her pocket, the victim told defendant that it was in the house. As defendant and the victim continued to struggle, the victim was pushed to the ground again. Defendant then picked her up and threw her into the trunk of the car. Defendant tried to close the victim in the trunk, but the lid hit the victim's head and would not close. The victim locked her knees against the inside of the trunk, so that defendant could not push her farther inside, and defendant was unable to close the lid. Eventually, defendant pulled the victim out of the trunk and told her to go to the house and retrieve her money.

The victim returned to the house. Once inside, Robert helped the victim change her clothes. At that point, the victim lost track of the pants that she had been wearing, along with the money that had been inside the pocket. Jeremy's mother called 9-1-1, and an ambulance arrived and transported the victim to the hospital. Police later arrested defendant in an apartment, where they also found $250 in cash. In searching Amanda's car, police found three rolls of tape, a meat cleaver, and a crowbar.

A grand jury indicted defendant for multiple crimes, including kidnapping in the first degree. ORS 163.235(1), set out below. At the close of the state's case, defendant moved for a judgment of acquittal on the kidnapping charge, arguing that the evidence was insufficient to show that the movement of the victim had been "substantial." The trial court denied that motion, and a jury convicted defendant of kidnapping in the first degree.[1] Defendant appealed, arguing

---

[1] The jury also convicted defendant of robbery in the first degree, conspiracy to commit robbery in the first degree, and assault in the fourth degree. The jury acquitted defendant of conspiracy to commit aggravated murder, attempted aggravated murder, and conspiracy to commit kidnapping in the first degree.

again that the evidence was insufficient to sustain a kidnapping conviction. Specifically, he argued that no reasonable factfinder could have found that he had moved the victim "from one place to another," as required by ORS 163.225(1)(a), the companion statute to ORS 163.235.[2]

As noted, the Court of Appeals affirmed. The court first determined, based on this court's opinion in *State v. Murray*, 340 Or 599, 136 P3d 10 (2006), that the phrase "from one place to another" in ORS 163.225(1)(a) requires that the victim's movement be "substantial." The court then noted the qualitative differences between the open driveway from which the victim had been moved and the enclosed trunk in which she had been placed. In concluding that the movement in this case was sufficient, the court reasoned as follows:

> "Because *Murray* teaches that movement from one place to another is 'substantial' movement, and defendant moved the victim from one place to another, we conclude that the movement here was also substantial, despite the fact that the actual distance, as measured in feet and inches, might be less than the distance the court found to be insubstantial in [other cases]."

*Walch*, 218 Or App at 92. Defendant petitioned for review of the Court of Appeals decision, and we allowed review to consider whether moving the victim from the driveway to the car trunk here qualified as moving the victim "from one place to another" for purposes of ORS 163.225(1)(a).

In reviewing the sufficiency of the evidence in a criminal case, "the relevant question is whether, after viewing the evidence in the light most favorable to the state, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). The first-degree kidnapping statute, ORS 163.235(1), provides:

---

[2] Before the Court of Appeals, defendant also argued that the trial court had erred in refusing to give an instruction on the lesser-included offense of robbery in the second degree and that the trial court had erred in imposing consecutive sentences. The Court of Appeals rejected those arguments, *State v. Walch*, 218 Or App 86, 92-96, 178 P3d 301 (2008), defendant does not raise them in this court, and we do not address them.

"A person commits the crime of kidnapping in the first degree if the person violates ORS 163.225 with any of the following purposes:

"(a)  To compel any person to pay or deliver money or property as ransom;

"(b)  To hold the victim as a shield or hostage;

"(c)  To cause physical injury to the victim; or

"(d)  To terrorize the victim or another person."

ORS 163.225, in turn, provides, in relevant part:

"(1)  A person commits the crime of kidnapping in the second degree if, with intent to interfere substantially with another's personal liberty, and without consent or legal authority, the person:

"(a)  Takes the person from one place to another; or

"(b)  Secretly confines the person in a place where the person is not likely to be found."

Thus, to establish kidnapping here, the state had to prove that defendant (1) took the victim "from one place to another"; (2) "with intent to interfere substantially with [her] personal liberty"; (3) "without consent or legal authority"; and (4) with the purpose of causing her "physical injury." ORS 163.235(1)(c); ORS 163.225(1)(a).

Defendant does not argue that the evidence was not sufficient for the jury to find that he intended to "interfere substantially" with the victim's personal liberty, that he acted "without consent or legal authority," and that his purpose in taking the victim was to cause her "physical injury." His sole argument on review is that the facts described above are not sufficient to permit a reasonable juror to find that he took the victim "from one place to another," as required by ORS 163.225(1)(a).

As this court recently noted, an analysis of the text and context of the phrase "from one place to another" in the kidnapping statute provides little guidance in determining its meaning:

"The question of what is included in the concept of 'taking' a person 'from one place to another' is, at bottom, an

exercise in metaphysics. The words 'from' and 'to' create no problem here, because they clearly describe the idea of movement, *i.e.*, of a change of position. And 'another' simply replicates 'place'—*i.e.*, the statutory phrase fairly may be paraphrased as a matter of standard English to require that a person be moved 'from place to place.' Thus, in the final analysis, this case comes down to the question of how one is to define the term 'place' for the purposes of ORS 163.225(1)(a).

"And here is where the metaphysics problem arises. The criminal code, of which ORS 163.225 is a part, contains no definition of 'place.' Absent a special definition, we ordinarily would resort to dictionary definitions, assuming that the legislature meant to use a word of common usage in its ordinary sense. *See PGE* [*v. Bureau of Labor and Industries*], 317 Or [606,] 611[, 859 P2d 1143 (1993)] (noting that words of common usage typically should be given their plain, natural, and ordinary meaning). But resort to a dictionary gets us nowhere here. 'Place' is defined, in *Webster's Third New Int'l Dictionary* 1727 (unabridged ed 2002), as 'an indefinite region or expanse.' Such a definition hardly can be said to clarify the issue. (There are many other definitions, but none comes as close as the foregoing to addressing the problem before us.)"

*Murray*, 340 Or at 603-04. We turn to legislative history to aid us in determining legislative intent.

To understand the legislature's intent in using the phrase "from one place to another" in ORS 163.225(1)(a), it is useful to begin with a discussion of the definition of kidnapping before the legislature enacted a comprehensive revision of Oregon's criminal laws, including the kidnapping statutes, in 1971.[3] At common law in England, kidnapping was defined as "the forcible abduction or stealing away" of a person from that person's own country to another. 4 William Blackstone, *Commentaries on the Laws of England* 219 (1769). In the United States, one needed to remove a person only from that person's own state, rather than from the country, and by the

---

[3] In 1967, the legislature established the Criminal Law Revision Commission to revise and modernize the criminal laws of Oregon. Or Laws 1967, ch 573, §§ 1-2. In 1971, as part of that comprehensive revision, the legislature enacted the current kidnapping statutes, ORS 163.225 and ORS 163.235. Or Laws 1971, ch 743, §§ 98-99.

1950s, nearly all state legislatures had broadened the definition even further. Rollin M. Perkins, *Criminal Law* 134-35 (1957). California's kidnapping statute, for example, provided that " '[e]very person who seizes, confines, inveigles, entices, decoys, abducts, conceals, kidnaps or carries away any individual by any means whatsoever with intent to hold or detain, or who holds or detains, such individual for ransom, reward or to commit extortion or robbery' " committed the crime of kidnapping. *See People v. Knowles*, 35 Cal 2d 175, 180, 217 P2d 1, 4 (1950) (quoting California's kidnapping statute; emphasis omitted).[4]

With that broader definition, prosecutors began charging defendants with kidnapping when they moved their victims only a short distance or confined their victims for a short duration. Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 99, 99-100 (July 1970). As a result, even when defendants moved or confined their victims incidentally to the commission of another crime, such as rape or robbery, prosecutors might charge them with kidnapping.[5] The

---

[4] Oregon's pre-revision kidnapping statute required proof that the perpetrators *intended* to remove the victim from the state or to secretly confine the victim within the state. *Former* ORS 163.610 (1969), *repealed by* Or Laws 1971, ch 743, § 432, provided:

"Every person who without lawful authority forcibly seizes and confines, inveigles or kidnaps another, with intent to cause such other person to be secretly confined or imprisoned in this state against his or her will, or to cause such other person to be sent out of the state against his or her will, shall be punished by imprisonment in the penitentiary for not more than 25 years or by a fine not exceeding $10,000, or both."

Before the 1971 revision, the definition of kidnapping in Oregon had remained nearly unchanged for almost 100 years. The Codes and General Laws of Oregon, ch II, title II, § 1746 (Hill 1887).

The commentary to the revised criminal code does not indicate whether the drafters considered Oregon's statute to be similar to those of other states that are discussed in the commentary. Indeed, the commentary contains little discussion of the elements of the pre-1971 Oregon kidnapping statute, cases decided under that statute, or the effect of the changes made in the 1971 revision, except to state that the draft "retains the existing Oregon system * * * of dividing kidnapping into separate degrees" and that "the kidnapping in the second degree section retains the basic provisions of [then-existing second-degree kidnapping]." Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 99, 100 (July 1970).

[5] Nothing in the commentary suggests whether the drafters believed that that specific problem existed in Oregon under the pre-1971 Oregon statute.

drafters of the revised criminal code thus sought to reestablish kidnapping as an independent crime based on facts different from those that would support a conviction for another crime:

> "Current kidnapping statutes apply to abductions which are incidental to or an integral part of the commission of an independent crime such as robbery or rape where the victim is removed and confined for a given period to effectuate the criminal purpose. Where the detention period is brief there is no genuine kidnapping. However, cases of this nature are sometimes prosecuted as kidnapping in order to secure the death penalty or life imprisonment for behavior that amounts in substance to rape or robbery in jurisdictions where these offenses are not subject to such penalties."

*Id.*

Although the legislative history demonstrates that the drafters were concerned with excluding from the kidnapping statutes conduct that was merely incidental to another crime, determining how the drafters intended to exclude that conduct is a more difficult undertaking. The commentary is of little use. As noted above, it describes the problem in detail. But, at least in their effort to clarify the defendant's required "movement" or confinement of the victim for kidnapping purposes, the drafters were more explicit about the tests that they rejected than about the test that they eventually adopted. The drafters considered solutions adopted by other jurisdictions, as described in the commentary:

> "The Model Penal Code provides for kidnapping only where the kidnapper *removes the victim from his place of residence or business, or a substantial distance from the vicinity where he is found*, or if the kidnapper unlawfully confines the victim for a substantial period in a place of isolation. New York has selected the arbitrary figure of twelve hours to designate the point in the course of a criminal project at which the abduction becomes a major offense in itself and not merely a facet of some other crime."

*Id.* at 100 (emphasis added). But the proposed statute's evolution and the legislative history demonstrate that the drafters did not entirely adopt either the Model Penal Code or the New York solution that they described.

■     The drafters rejected New York's solution of an arbitrary time limit outright; no drafts contained a time limit of a specified number of minutes or hours. *See* Minutes, Criminal Law Revision Commission, Subcommittee No 2, Oct 25, 1968, 3 (discussing and rejecting numerical limit). Early drafts adopted the Model Penal Code's solution of requiring that the kidnapper move the victim a "substantial distance." In the first preliminary draft, and in one of three alternatives in the second preliminary draft, the drafters distinguished between second-degree kidnapping and first-degree kidnapping in part based on whether the defendant had moved the victim a "substantial distance." That is, moving the victim a substantial distance helped to elevate the crime from second- to first-degree kidnapping. Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 1, Art 12, § 3(1) (Oct 1968); Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 2, Art 12, § 3 (alternate 2) (Dec 1968). By the third draft, however, the drafters distinguished between first- and second-degree kidnapping based solely on the kidnapper's *purpose* and eliminated any reference to moving the victim a substantial distance. Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 3, Art 12, § 3 (Feb 1969). In fact, "[a]s finally enacted[,] the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the '*intent* to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping * * *." *State v. Garcia*, 288 Or 413, 421, 605 P2d 671 (1980) (emphasis in *Garcia*); *see also* ORS 163.225(1) ("substantially" used only in reference to intent).

The legislative history demonstrates that the drafters were concerned with avoiding the all-encompassing kidnapping definitions that existed in some states at the time that they were drafting the new code. Specifically, the drafters sought to avoid a kidnapping statute that would allow prosecutors to charge kidnapping when the defendant had moved or confined the victim only to effectuate another crime. The legislative history also demonstrates that the drafters considered, and ultimately rejected, the solutions of

other jurisdictions. However, nowhere in the legislative history did the drafters explain the solution that they ultimately adopted. We therefore return to the text of the statute, keeping in mind the drafters' intent that the kidnapping statute not apply to situations where the movement or confinement of the victim is only incidental to the commission of an independent crime.

The drafters' wording of the intent element in ORS 163.225(1) makes it apparent that it was through *that* element that they sought to avoid an over-inclusive definition of second-degree kidnapping. As noted, the only place that the drafters used the word "substantially" is in describing the extent of interference with the victim's liberty that the defendant must "inten[d]." And that is where this court has most frequently referred to a "substantial distance" requirement. That is, for a defendant to act with intent to interfere "substantially" with another's personal liberty, that defendant need not move the victim a substantial distance or confine the victim for a substantial period of time, but rather "must *intend* either to move the victim a 'substantial distance' or to confine the victim for a 'substantial period of time.'" *State v. Wolleat*, 338 Or 469, 475, 111 P3d 1131 (2005) (emphasis added).

■ In contrast, the history and wording of the asportation element in ORS 163.225(1)(a) indicate that the drafters did not intend to incorporate a "substantial distance" requirement into the statute when they used the phrase "from one place to another." Indeed, as discussed above, the drafters deleted references in earlier drafts to a "substantial distance" requirement, which would have applied to the asportation itself. Nonetheless, the wording of the statute indicates that the legislature intended the asportation element to aid in narrowing the definition of kidnapping, albeit not by requiring that the defendant move the victim a "substantial distance" in every case. ORS 163.225(1)(a) requires that the defendant move the victim "from one place to another"—not, for instance, that the defendant simply "move" the victim or move the victim "any distance." The legislature intended the word "place" to have some meaning; that is, a kidnapping does not occur by moving the victim *any* distance with intent

to interfere substantially with his or her personal liberty. Rather, the movement must be such that it can be said that the victim was moved from "one place" to "another [place]."

■■ As this court has stated, "the 'place' in which something or someone may be found and from which that something or someone may be taken is situational and contextual." *Murray*, 340 Or at 606. Defendant argues, largely based on *Murray*, that, regardless of the context, one cannot take another person "from one place to another" for purposes of ORS 163.225(1)(a) without moving that person a "substantial distance." As we discuss in greater detail below, although a sentence in *Murray* provides some support for that argument, that sentence—and the conclusion defendant seeks to draw from it—is not necessary to the result in *Murray* and is inconsistent with the legislative history and with other cases decided by this court. Defendant's argument would essentially substitute the phrase "substantial distance"—a phrase that the legislature considered and rejected—for the phrase "from one place to another"—the phrase that the legislature actually used. As this court state in *Wolleat*, "[b]y its terms, the phrase ['from one place to another'] does not require that a defendant take a victim a specific distance, nor does it require that the distance be substantial." 338 Or at 473.

Indeed, we know from the legislative history that the phrase "from one place to another" means something different than "substantial distance." The first draft of the kidnapping provisions considered by the Criminal Law Revision Commission provided that a person would commit the crime of second-degree kidnapping if, among other things, the person moved the victim "from one place to another." *See* Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 1, Art 12, § 1(1) (Oct 1968) (defining "restrain").[6] That draft also provided that second-degree kidnapping would become first-degree kidnapping if, among

---

[6] The first draft provided that a person committed the crime of second-degree unlawful imprisonment if he "restrain[ed] another person." Criminal Law Revision Commission, Subcommittee No 2, Preliminary Draft No 1, Art 12, § 4 (Oct 1968). "Restrain" was defined as interfering with another's liberty by "moving him from one place to another." *Id.* at § 1(1). Second-degree kidnapping was defined as "abduct[ing] another person." *Id.* at § 2(1). "Abduct" was defined as "restrain[ing] a person with intent to prevent his liberation by [one of two means]." *Id.* at § 1(2). Proof that a defendant moved a person "from one place to another" was thus

other things, the person moved the victim "a substantial distance from the vicinity where he is found." *Id.* at § 3(1). The drafters necessarily intended the two phrases to mean different things and that a person need not move the victim a "substantial distance" to move the victim "from one place to another." Moreover, because moving the victim a "substantial distance," rather than "from one place to another," elevated the crime to first-degree kidnapping, it is apparent that the drafters intended the phrase "substantial distance" to require a greater amount or degree of movement than the phrase "from one place to another."

■ The distance that the victim is moved is one important consideration in determining whether the victim was moved "from one place to another"—*i.e.*, moving the victim a "substantial distance" more likely will entail moving the victim "from one place to another"—but that is not the only variable that we must consider. In enacting the kidnapping statute, the drafters' primary concern was protecting the victim's personal liberty or "freedom of movement." *Wolleat*, 338 Or at 474; *see also* ORS 163.225(1) (kidnapping entails acting "with intent to interfere substantially with another's personal liberty"). Thus, another important factor in determining whether the defendant moved the victim "from one place to another" is whether the movement served to limit the victim's freedom of movement and increase the victim's isolation.

In *Murray*, for example, the defendant, in the course of stealing the victim's car, pushed the victim from the driver's seat to the passenger seat. The victim immediately opened the passenger side door and exited the car; the defendant closed the passenger door and drove away. 340 Or at 601-02. This court determined that the evidence had failed to show that the "defendant tried to *keep* [the victim] in the car. Instead, [the] defendant drove the car away." *Id.* at 606 (emphasis in original). Indeed, the defendant pushed the victim to the passenger seat, where she could escape more easily by opening the passenger door. Far from serving to isolate the victim or limit her freedom of movement, the defendant's

necessary to prove both second-degree kidnapping and the lesser crime of second-degree unlawful imprisonment.

movement of the victim in that case indirectly led to the victim's freedom. That fact, coupled with the fact that the defendant had moved the victim only a few feet, led this court to conclude that the defendant had not moved the victim "from one place to another."

■ Here, in contrast, the "situation[ ]" and "context[ ]," *Murray*, 340 Or at 606, surrounding the incident provide support for the jury's determination that defendant took the victim "from one place to another." The victim was originally in the driveway, an open area from which she might have run away or been seen by the people inside the house. Defendant attacked the victim and fought with her, moving her approximately 15 feet. Defendant then picked the victim up and shoved her into a car, a location (and an object) intended to quickly move people a distance of some miles. Further, defendant not only forced the victim into a car, but into the *trunk* of a car, a place in which, as the Court of Appeals accurately stated, "a human being could be put for almost no innocent purpose." *Walch*, 218 Or App at 92. Because the context is such that defendant moved the victim from one place (the open driveway) to a qualitatively different, more mobile and isolated place (the trunk of a car), we conclude that the asportation element of the kidnapping statute has been satisfied. Moreover, the 15 feet that defendant moved the victim is several times the distance involved in *Murray*, regardless of whether that distance is considered quantitatively "substantial."[7] We need not decide whether defendant moved the victim a "substantial distance," because the kidnapping statutes do not require that the victim be moved a "substantial distance" or, indeed, any specific distance. The distance of the movement is simply one factor in determining whether the defendant, with the intent to interfere substantially with the

___

[7] The Court of Appeals stated that movement can only be "from one place to another" if the movement is "substantial"—a statement that the Court of Appeals based on its understanding of *Murray*. *Walch*, 218 Or App at 91. As discussed above, the asportation requirement of ORS 163.225(1)(a) does not even use the word "substantial," and the drafters considered, but rejected, the use in that section of the term "substantial distance." This court's cases, including *Garcia*, *Wolleat*, and *Murray*, mention "substantial distance" as one aspect of proving the required intent to "substantially interfere," but they do not state—with the exception of one sentence in *Murray*—that "substantial movement" is the only way to prove that a defendant moved a victim from one place to another.

victim's personal liberty, took the victim "from one place to another."[8]

For the foregoing reasons, we conclude that the evidence was sufficient to permit a reasonable jury to find that defendant had moved the victim "from one place to another" for purposes of ORS 163.225(1)(a). As noted, defendant does not argue that the evidence was insufficient to permit a reasonable jury to find the three other elements of first-degree kidnapping, including that defendant "inten[ded] to interfere substantially with another's personal liberty." The trial court therefore properly denied defendant's motion for a judgment of acquittal.

The dissent protests that we are overruling relevant precedent, asserting that several of this court's prior cases "equat[e] * * * the requirement that movement be 'from one place to another' under ORS 163.225(1)(a), when it occurs in the context of a separate substantive offense, with movement of a 'substantial distance.' " 346 Or at 488 (Gillette, J., dissenting). Not surprisingly, we disagree. The analysis above of the phrase "from one place to another" and of this court's cases interpreting that phrase is consistent with, and would lead to the same results in, the three cases that the dissent mentions, *Garcia*, *Wolleat*, and *Murray*. Moreover, it is consistent with this court's unequivocal statement in *Wolleat* that the term "from one place to another" in ORS 163.225(1)(a) "does not require that a defendant take a victim a specific distance, nor does it require that the distance be substantial." 338 Or at 473.

The only support for the dissent's position that this court's cases "equate" "from one place to another" with "substantial distance" is one sentence in *Murray*. However, as we will demonstrate, that sentence is not essential to the result in *Murray*, and, more importantly, it is inconsistent with other cases and with the legislative history of the kidnapping

---

[8] Because we have determined that defendant moved the victim from "one place to another" by moving her from the open driveway into the enclosed trunk, we need not address the state's argument that the distance that the victim voluntarily moved pursuant to defendant's ruse—from inside the house to the driveway—should be included in the distance that defendant "took" the victim.

statutes. As noted, in *Murray*, the defendant shoved the victim from the driver's seat of the victim's car into the passenger seat, where the victim opened the door and got out, as the defendant said "get out, bitch." *Murray*, 340 Or at 602. This court examined whether that evidence would permit a jury to find the asportation element of second-degree kidnapping—that the defendant had "[t]ake[n] the [victim] from one place to another." ORS 163.225(1)(a). As we already have seen, the court discussed the meaning of the words in the statute—particularly the word "place"—and quoted extensively from the discussion of the legislative history of the kidnapping statutes in *Garcia. Murray*, 340 Or at 603-06. The court noted that the meaning of "place" was "situational and contextual" and that it was, "among other things, a function of the object to be moved, as well as a function of the area in which the movement occurs." *Id.* at 606. The court then applied the law that it had reviewed to the facts of the case:

> "But however one may wish to characterize the confrontation between defendant and [the victim] in the car, no evidence indicates that defendant tried to *keep* [the victim] in the car. Instead, defendant drove the car away. That means that, even if one were to find some sort of asportation in the events in question, it was only 'incidental'—as that word was used in *Garcia*—to defendant's theft of the car and, therefore, not the kind of conduct that the legislature intended to permit to serve as the basis for a separate kidnapping charge. Put differently, defendant did not 'take' [the victim] anywhere or, even if he did, the distance that [the victim] moved was not 'substantial,' *i.e.*, was not 'from one place to another.' *See Garcia*, 288 Or at 421 (defendant guilty of kidnapping only if, during commission of another substantive offense, he took victim 'substantial distance')."

*Id.* at 606-07 (emphasis in original).

Obviously, the first three sentences in the paragraph just quoted—indeed, the first three and a half sentences—are sufficient to reach the result that the court reached in *Murray* and are entirely consistent with the analysis above: a kidnapping requires a "tak[ing]" of the victim "from one place to another" that is not "only 'incidental' " to another crime. In *Murray*, there was no evidence that the defendant took the victim from one place to another. He simply shoved her

across the seat and, after she opened the door and got out, shut the door and drove off without her. The defendant's physical contact with the victim was "only incidental" to the other crimes that he committed: robbery, assault, and unauthorized use of a motor vehicle. Here, in contrast, defendant assaulted and robbed the victim. He *also* moved the victim about 15 feet to the car, lifted her off the ground, placed her in the trunk, and tried to shut the trunk lid. Our conclusion that the foregoing conduct meets the asportation requirement of ORS 163.225(1)(a) is consistent with the words of that statute and with this court's cases.

The dissent nevertheless focuses on the last sentence in the paragraph from *Murray*, quoted above, which states that, even if the defendant in that case had "take[n]" the victim anywhere, "the distance that [the victim] moved was not 'substantial,' *i.e.*, was not 'from one place to another.' " *Murray*, 340 Or at 606. As support for that proposition, *Murray* provides, and the dissent quotes, the following citation: "*See Garcia*, 288 Or at 421 (defendant guilty of kidnapping only if, during commission of another substantive offense, he took victim 'substantial distance')."[9] *See* 346 Or at 488 (Gillette, J., dissenting) (quoting *Murray*, 340 Or at 606-07).

Other than the material just quoted, nothing in any Oregon case or statute even suggests that the requirement in ORS 163.225(1)(a) that the defendant "take" the victim "from one place to another" requires that the defendant move the victim a "substantial distance." On the contrary, as the legislative history discussed above makes clear, the Criminal Law Revision Commission considered and rejected a proposal to require, for a kidnapping conviction, that the defendant move the victim a "substantial distance." And the Commission considered, but did not adopt, a different proposal that would have used movement "from one place to

---

[9] This court's opinion in *Murray* did not cite or explain the directly contrary statement in *Wolleat* that the asportation requirement of ORS 163.225(1)(a) "does not require that a defendant take a victim a specific distance, nor does it require that the distance be substantial." *State v. Wolleat*, 338 Or 469, 473, 111 P3d 1131 (2005).

another" to describe second-degree kidnapping and movement of a "substantial distance" to describe first-degree kidnapping. That undisputed background demonstrates that, whatever those two different phrases mean, they cannot mean the *same thing*. The dissent's position is untenable.

One might fairly ask, then, where the sentence from *Murray*, 340 Or at 606, and the parenthetical in *Murray* describing *Garcia*, 288 Or at 421, originated. The answer is found in this court's editing, in *Murray*, of the extensive quotation from *Garcia* that discusses the legislative history of the kidnapping statutes. In *Garcia*, the court reviewed the Criminal Law Revision Commission's efforts to define kidnapping in a way that would prevent a separate kidnapping conviction "where the detention or asportation of the victim is merely incidental to the accomplishment of another crime, particularly that of robbery or rape." *Garcia*, 288 Or at 420. That review quoted subcommittee minutes, statutes from other states, different drafts of statutes, and statements by committee staff and witnesses. For the dissent, the critical sentence from *Garcia* is the following, which this court quoted in *Murray*:

> "The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. *The Commission reasoned that even though the malefactor's conduct offended the statutory injunctions [against some other substantive offense], he would be guilty of kidnapping also if in committing [that other offense] he took the victim a 'substantial distance' or held the victim for 'a substantial period of time.'*"

*Murray*, 340 Or at 605-06 (quoting *Garcia*, 288 Or at 420-21) (internal quotation marks omitted; emphasis and bracketed material in *Murray*).

Unfortunately, in excerpting that quotation from *Garcia*, *Murray* omitted the following, which appears in *Garcia* directly after the sentence just quoted and is part of the same paragraph:

> "See n. 3, *supra*. As finally enacted[,] the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the '*intent* to interfere substantially'

with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225."

*Garcia*, 288 Or at 421 (footnote omitted; emphasis in *Garcia*).[10]

*Murray*'s omission of that text in its quote from *Garcia* leaves the inaccurate impression that, to be guilty of kidnapping under ORS 163.225, the perpetrator must move the victim a "substantial distance" or hold the victim for a "substantial period of time." And from that inaccurate impression, *Murray* draws the similarly inaccurate conclusion quoted previously. The inaccuracy becomes apparent when one examines the omitted part of the paragraph from *Garcia*. The citation—"See n. 3, *supra*"—is to a long quotation from the minutes of a subcommittee of the Commission regarding a discussion of the *first draft* of the kidnapping statute, *see Garcia*, 288 Or at 417 n 3, and shows that the court in *Garcia* (in the sentence emphasized in *Murray*) was *not* describing any Oregon statute, but rather a discussion draft presented to the Commission. The references in that first draft to "substantial distance" and "substantial period of time" were *deleted* in later drafts and do not appear in the kidnapping statutes as enacted. The sentence in *Garcia* following that citation reinforces the conclusion that *Garcia* correctly reached that the kidnapping statute as enacted *contrasted* with the earlier drafts: "As finally enacted[,] the law does not even require that there actually be a substantial interference with the victim's personal liberty * * *." *Garcia*, 288 Or at 421.

The dissent also suggests that, because we discuss the fact that defendant forcibly put the victim in the trunk of the car, we are somehow conflating the asportation element of the kidnapping statute, ORS 163.225(1)(a), with the alternative confinement element of ORS 163.225(1)(b). Under that provision, a person with the requisite intent is guilty of

[10] To its credit, when the dissent quotes *Garcia*, it includes this sentence, unlike the majority opinion in *Murray*. 346 Or at 486 (Gillette, J., dissenting). Nevertheless, the dissent omits the citation that, as stated in the text, shows that the sentence preceding the citation—which both *Murray* and the dissent emphasize and rely upon—does not describe the kidnapping statute as enacted.

second-degree kidnapping if the person "[s]ecretly confines the [victim] in a place where the [victim] is not likely to be found." (Kidnapping by confinement was not charged here.) The dissent misses the point. The car trunk is relevant, in our view, not because it is a "secret" place where the victim might be confined and not be likely to be found, but because it was "another" "place" to which defendant took the victim after he attacked her outside the house. As this court stated in *Murray*, 340 Or at 606, determination of the "place" from which and the other "place" to which the victim must be "taken" to meet the asporation requirement is "situational and contextual." The fact that defendant moved the victim to a car and, indeed, a car trunk—rather than simply to a spot on the driveway 15 feet from where he first attacked her—supports our interpretation of the statute, as well as the jury verdict here.[11]

We agree with the dissent that the legislature took pains to enact a kidnapping statute that would limit "the separate crime of kidnapping" to situations "where the detention *or* asportation is *not merely incidental* to the commission of the underlying crime." *Garcia*, 288 Or at 420 (emphasis in original). However, the dissent—and the sentence in *Murray* discussed above—is incorrect in stating that the legislature intended to achieve that result by requiring that the detention be for a "substantial period of time" or that the asportation be movement of a "substantial distance."[12] Rather, as the legislative history and this court's decision in *Garcia* show, the legislature intended to achieve that result by requiring proof that the perpetrator had the "intent to interfere substantially" with the victim's personal liberty. *Garcia*, 288 Or

---

[11] Of course, the asportation and confinement elements are not mutually exclusive. A defendant might well take a person from one place to another (with the requisite intent) *and* secretly confine the person where the *person is not likely to be found*. Because confinement was not charged here, however, there is no need to consider whether the evidence in this case would have supported a conviction under that prong of the kidnapping statute.

[12] Similarly, the citation in *Murray* to *Garcia*, which includes a parenthetical statement purporting to describe *Garcia* as holding (or stating) that one is guilty of kidnapping "only if, during commission of another substantive offense, he took victim 'substantial distance,'" *Murray*, 340 Or at 606-07, is not an accurate description of *Garcia*. The dissent also perpetuates that error. *See* 346 Or at 488 (Gillette, J., dissenting) (quoting *Murray*, 340 Or at 606-07).

at 421. Defendant does not argue that that requirement was not met here.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**GILLETTE, J.,** dissenting.

The lead opinion today holds that moving a robbery victim 15 feet during a mutual affray and attempting (unsuccessfully) to force the victim into the open trunk of a car constitutes "tak[ing] the person from one place to another," a required element of the kidnapping crime defined at ORS 163.225(1)(a). In doing so, the opinion cites (but then *sub silentio* overrules) relevant precedent. As I hope to show, that is not a defensible course for this court to follow but, even if it were the correct analysis, it answers the wrong question.

The problem here arises out of defendant's attempt to steal money from the victim. Defendant and his co-conspirators planned to lure the victim onto an unlit lawn and driveway area adjacent to a house, ostensibly to have the victim look at alleged damage to a car that one of the co-conspirators had parked in the driveway. Defendant would then accost the victim and take money that he believed she was carrying.

So much for planning. As it turned out, when defendant accosted the victim in the vicinity of the car, she put up a spirited physical resistance. The struggle moved the parties to the rear of the car, a distance of no more than 15 feet. Defendant, when his other efforts to subdue the victim failed, finally tried to throw her into the trunk of the car. He did not succeed: She continued to fight, and the trunk was already partially filled. Defendant finally let go of the victim and instructed her to go into the house and bring back her money. The "kidnapping"—if any there was—was over.

The crux of the lead opinion's holding is this:

"[T]he 'situation' and 'context' * * * surrounding the incident provide support for the jury's determination that defendant took the victim 'from one place to another.' The victim was originally in the driveway, an open area from which she might have run away or been seen by the people inside the house. Defendant attacked the victim and fought

with her, moving her approximately 15 feet. Defendant then picked the victim up and shoved her into a car, a location (and an object) intended to quickly move people a distance of some miles. Further, defendant not only forced the victim into a car, but into the *trunk* of a car, a place in which, as the Court of Appeals accurately stated, 'a human being could be put for almost no innocent purpose.' * * * Because the context is such that defendant moved the victim from one place (the open driveway) to a qualitatively different, more mobile and isolated place (the trunk of a car), we conclude that the asportation element of the kidnapping statute has been satisfied. Moreover, the 15 feet that defendant moved the victim is several times the distance involved in [*State v.*] *Murray*[, 340 Or 599, 136 P3d 10 (2006)] regardless of whether that distance is considered quantitatively 'substantial.'[7] We need not decide whether defendant moved the victim a 'substantial distance' * * *.

---

"[7] The Court of Appeals stated that movement can only be 'from one place to another' if the movement is 'substantial'—a statement that the Court of Appeals based on its understanding of *Murray*. * * * As discussed above, the asportation requirement of ORS 163.225(1)(a) does not even use the word 'substantial,' and the drafters considered, but rejected, the use in that section of the term 'substantial distance.' This court's cases, including [*State v.*] *Garcia*[, 288 Or 413, 605 P2d 671 (1980)], [*State v.*] *Wolleat*[, 338 Or 469, 111 P3d 1131 (2005)], and *Murray*, mention 'substantial distance' as one aspect of proving the required intent to 'substantially interfere,' but they do not state—with the exception of one sentence in *Murray*—that 'substantial movement' is the only way to prove that a defendant moved a victim from one place to another."

346 Or at 476 (emphasis in original; citations omitted).

At bottom, the flaw in the lead opinion's analysis (which concludes that the asportation element of ORS 163.225(1)(a) is met by what it insists on characterizing as a "qualitative difference" between two different places, even if the distance between the two places is not quantitatively substantial) is that it unwittingly conflates the asportation element in ORS 163.225(1)(*a*) ("takes * * * from one place *to another*) (emphasis added) with the secreting element of ORS 163.225(1)(*b*) ("[s]ecretly confines the person *in a place* where

the person is not likely to be found") (emphasis added).[1] That is evident from the majority's focus on the movement of the victim to the trunk of a car, which it describes as a "place" where "a human being could be put for almost no innocent purpose" and, again, as an "isolated place." The lead opinion also refers—as if it mattered—to the assumed facts that the driveway was "an open area from which [the victim] might have run away or been seen by the people inside the house." All those comments show that the lead opinion is preoccupied by what it believes to be the defendant's efforts to hide the victim from the view of others. But defendant was not charged with *secreting* the victim[2] and, therefore, the case below and before this court is not about secreting. The court should not overrule precedent interpreting the phrase "takes * * * from one place to another" in ORS 163.225(1)(a) to accommodate its obvious concern with the apparent attempt to secrete the victim that the facts may suggest, but which never was charged.

And make no mistake, the lead opinion *is* overruling two of this court's previous cases: In *Garcia*, for example, the court undertook an extensive analysis of the legislative history of the kidnapping statutes. The court there characterized the purpose of the drafters of the criminal code this way:

> "The minutes reveal that the drafters intended to prevent conviction and sentencing for kidnapping when the detention was *merely incidental* to a rape or robbery."

288 Or at 417 (emphasis added). The court then went on to state:

> "From this history we draw the inference that the Commission, and subsequently the legislature, intended that there be no conviction of the defendant for the separate crime of kidnapping where the detention or asportation of the victim is *merely incidental* to the accomplishment of another crime * * *."

---

[1] The majority quotes the entire statute at 346 Or at 468.

[2] Count 3 of the indictment charged defendant with "unlawfully and knowingly, without consent or legal authority, tak[ing the victim] from one place to another, with the intent to interfere substantially with [the victim's] personal liberty * * *."

*Id.* at 420 (emphasis added). The *Garcia* court then directly and unambiguously held the following:

> "The drafting technique utilized to accomplish the legislative purpose is manifested in the definition of the crime of kidnapping. *The Commission reasoned that even though the malefactor's conduct offended the statutory injunctions [against some other substantive offense], he would be guilty of kidnapping also if in committing [that other offense] he took the victim a 'substantial distance' or held the victim 'a substantial period of time.'* * * * As finally enacted the law does not even require that there actually be a substantial interference with the victim's personal liberty; it is only necessary that the perpetrator have the *'intent* to interfere substantially' with the victim's personal liberty to make the malefactor guilty of kidnapping if he commits an act proscribed by ORS 163.225. We find nothing in legislative history to indicate the legislature intended by its adverb 'substantially' anything other than was intended by the Commission in its use of the adjective 'substantial.' "

*Id.* at 420-21 (emphasis added).

As the foregoing recitation makes clear, the *Garcia* court did not, as the lead opinion would have it, "mention 'substantial distance' as one aspect of proving the required intent to 'substantially interfere.' " 346 Or at 476 n 7. Instead, the court recognized that the Commission (and the legislature) intended to eliminate overcharging in cases where movement of a victim was "merely incidental" to crimes such as the central crime in this case—robbery. In order to carry out that manifest intent, the *Garcia* court imposed a requirement that, where the defendant was attempting to commit some other substantive offense (in this case, robbery), the evidence show that the defendant moved the victim a "substantial distance." That requirement was designed to assure that the acts that constituted the alleged kidnapping were not "merely incidental" to another crime. Proof that a victim of another offense was moved "a substantial distance" from place to place thus was not about intent to "substantially interfere"—commission of the other substantive offense (rape, robbery, or the like) proved that. Instead, the "substantial distance" proof was intended to show that

defendant's acts were not *merely incidental* to the other substantive offense but, instead, constituted the separate crime of kidnapping. *Garcia* thus is flatly contrary to the lead opinion, and the lead opinion's attempt to avoid *Garcia* ignores history.

*State v. Wolleat*, the second case cited by the lead opinion, is further support for my point. There, the defendant assaulted his fiancée and, in the course of doing so, moved her 15 or 20 feet from one room in their home to another. He was convicted of fourth-degree assault and kidnapping. As the case presented itself to this court, the only issue was the sufficiency of the evidence to support the kidnapping conviction. 338 Or at 471-72.

This court, in its analysis, thoroughly examined *Garcia* and, for good measure, revisited the legislative history of ORS 163.225(1)(a). *Wolleat*, 338 Or at 474-78. The court then summarized its research this way:

> "One proposition emerges clearly from the legislative history. Moving a victim from one room to another while committing another crime does not constitute moving the victim a substantial distance. Put differently, that movement is not sufficient, by itself, to give rise to an intent to interfere substantially with the victim's liberty to move freely. *See Garcia*, 288 Or at 421 (explaining that concept of 'substantial distance' informs meaning of 'intent to interfere substantially'). With that background in mind, we turn to the facts of this case.

> "The evidence, viewed in the light most favorable to the state, shows that defendant moved the victim from the bedroom to the living room, approximately 15 to 20 feet, while he assaulted her. A reasonable juror could infer from that evidence that defendant intended to move the victim the distance that he did. However, an intent to do only that would be insufficient to establish the mental element necessary to prove kidnapping—a point that the legislative history makes clear. In order to find defendant guilty of kidnapping, a reasonable juror would have to be able to infer that defendant intended either to move the victim a greater distance than he did or to transport her to a place of confinement. As our recitation of the facts makes clear, no reasonable juror could draw that inference from this record.

> "We recognize, as the court did in *Garcia*, that in most cases the question whether the defendant intended to interfere substantially with the victim's liberty will present a question of fact for the jury. *Id*. In some cases, however, the intended movement will be so minimal that a court can say, as a matter of law, that no reasonable juror could find that the defendant had the statutorily required intent. This is one of those cases, as the examples in the legislative history make clear."

*Wolleat*, 338 Or at 478. The court then held that the evidence against defendant was insufficient. *Id*. at 478-79.

*Wolleat*, in other words, recognized that moving a victim a "substantial distance" was required in order to show that defendant *intended* to commit *kidnapping*, *i.e.*, intended—apart from and above the acts involved in the other substantive offense—*separately* to interfere substantially with the victim's liberty. Or, as the *Wolleat* court might just as readily have said, "The record in this case shows only movement that was merely incidental to the substantive offense."

Finally, the lead opinion dismisses *Murray*. 346 Or at 474. But that opinion cited all the foregoing parts of *Garcia* with approval. *Murray*, 340 Or at 604-06. And, after doing so, this court specifically agreed with *Garcia's* equating of the requirement that movement be "from one place to another" under ORS 163.225(1)(a), when it occurs in the context of a separate substantive offense, with movement of a "substantial distance." This court said:

> "Put differently, defendant did not 'take' [the victim in that case] anywhere or, even if he did, the distance that [the victim] moved was not 'substantial,' *i.e.*, was not 'from one place to another.' *See Garcia*, 228 Or at 421 (defendant guilty of kidnapping only if, during commission of another substantive offense, he took victim 'substantial distance')."

*Murray*, 340 Or at 606-07. Once again, and as a direct followup to the analysis in *Garcia* and in *Wolleat*, the *Murray* decision stands authoritatively for the precise proposition that the lead opinion now wishes to ignore.

In the long run, however, it may be that the "substantial distance" quarrel that I have with the lead opinion is

beside the point. The pivotal fact here is that the victim was moved by the acts of her attacker during the course of an assault and attempted robbery. Given that the victim resisted, it is hard to imagine any such crime in which the struggling parties would not move at least 15 feet. The movement clearly and inescapably was "incidental to" those crimes. We thus are not even called on to decide whether a 15-foot movement of a victim ever could be movement "from one place to another," as that concept appears in ORS 163.225(1)(a). Even if it could be such under some circumstances, that circumstance is not presented here.

I do not mean to suggest that the majority's sense that defendant's actions constituted some kind of kidnapping-related crime is entirely misplaced. It may be possible that defendant successfully could have been charged with *attempted* kidnapping under ORS 163.225(1)(*b*) on the theory that he attempted to "secretly confine" the victim in the trunk of a car—"a place where [she was] not likely to be found." But the prosecutor and the grand jury, not we, chose to charge defendant with violating ORS 163.225(1)(*a*). It is inappropriate for this court to adopt an entirely new reading of ORS 163.225(1)(a) that saves the prosecution from the consequences of its choice, simply because the place to which the victim was moved evokes in some of us a feeling of secret confinement.[3]

I respectfully dissent.

De Muniz, C. J., and Durham, J., join in this dissenting opinion.

---

[3] That is particularly true when, as here, the defendant is being held accountable for a completed kidnapping under an asportation theory when, if he had been properly charged under a secreting theory, he could at most have been found guilty only of *attempted* kidnapping.